UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN GALLOWAY, et al., <br><br>                 **Plaintiffs,** <br><br>    -against- <br><br> **APARTMENT INVESTMENT AND MANAGEMENT COMPANY, et al.,** <br><br>          **Defendants.** | 07 Civ. 06435 (LTS) |

---

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO STAY AND MOTION FOR EXPEDITED TREATMENT OF THE MOTION TO STAY

---

LITTLER MENDELSON, P.C.
885 Third Avenue – 16th Floor
New York, New York 10022
(212) 583-9600

and

HOLLAND & HART, LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80202-3979
(303) 295-8000

**Attorneys for Defendants**

*Of Counsel:*

Gregory B. Reilly, Esq.
John M. Husband, Esq. (admitted *pro hac vice*)

# TABLE OF CONTENTS

Page

I.  Introduction ....................................................................................................................1

    A.  Background facts.........................................................................................1

    B.  The parties' discovery agreement ..............................................................3

II.  Legal Analysis..............................................................................................................5

    A.  Legal framework ........................................................................................5

    B.  Few, if any, resources would be saved by a stay of this action....................7

    C.  Plaintiffs will not suffer any hardship or inequity if a stay is denied..........9

    D.  Defendants will suffer prejudice if this action is stayed ............................10

III.  Conclusion ................................................................................................................11

Defendants Apartment Investment and Management Company, AIMCO Properties, L.P., NHP Management Company, and AIMCO/Bethesda Holdings, Inc. hereby respond to Plaintiffs' Motion to Stay Proceedings Pending a Decision By the Judicial Panel on Multidistrict Litigation and to Plaintiffs' Motion for Expedited Treatment of Their Motion to Stay Proceedings.[1]

## I.     Introduction

### A.     Background facts

This case, as well as the twenty-one other cases which Plaintiffs seek to combine into multidistrict litigation, stems from Plaintiffs' claims for alleged failure to pay overtime due under the Fair Labor Standards Act ("FLSA") that were first asserted on August 7, 2003. On that date, seven plaintiffs filed their original complaint in *Chase v. AIMCO*, U.S. District Court for the District of Columbia, Civ. No. 1:03-CV-01683. Thereafter, the *Chase* court conditionally certified the case as a nationwide collective action, and approximately 1100 current and former employees of Defendants filed consents to join the action. The vast majority of those consents were filed between December 2005 and February 2006.

After the close of the period for employees to opt-in, Defendants moved to decertify the collective action, arguing that the seven plaintiffs and roughly 1100 opt-ins were not similarly situated. Defendants pointed out that these individuals worked at hundreds of different types of apartment properties scattered across the country, each with distinct local management. Defendants also pointed out that the company-wide policy on overtime was that overtime was to be paid in compliance with the FLSA. In an opinion dated March 28, 2007, the *Chase* court

---

[1]     At the outset, Defendants note that Plaintiffs' motions fail to comply with Local Rule 7.2, insofar as they lack any reference to the rule or statute forming the basis for the motions, and this Court's rules, insofar as the Notice of Motion fails to include a separate paragraph certifying that Plaintiffs used their best efforts to resolve these matters informally.

agreed, finding that the evidence "does not demonstrate the existence of a common, company-wide practice of non-payment of overtime" and that the plaintiffs' and opt-ins' claims "cannot overcome the 'disparate factual and employment settings of the individual plaintiffs' or 'the various defenses available.'"  *Chase v. AIMCO*, Civ. No. 1:03-CV-01683, at 1, 7, 13-14 (D.D.C. Mar. 28, 2007) (citation omitted).  The court then dismissed the claims of all opt-ins located in jurisdictions other than the District of Columbia.  Plaintiffs responded by blanketing the federal courts with 21 separate actions (including this action) in their respective jurisdictions on July 15, 2007, asserting the very same claims they had attempted to pursue in the *Chase* action.[2]

Despite the fact that the plaintiffs in these cases have asserted overtime claims against Defendants since 2003, none of them (other than the named plaintiffs in *Chase)* have responded to any written discovery relating to those claims.  (The discovery conducted in *Chase* was very limited in scope, concerning primarily the claims of the named plaintiffs and issues relating to decertification.)  Most of them have not worked at an AIMCO property in years; and several of them were employed for only a very brief period of time, having been terminated prior to the expiration of their 90-day probationary period.  Every one of them alleges that Defendants either failed to pay them all overtime they were due or failed to pay them properly for time spent on call.  However, very little evidence has ever been provided to Defendants concerning the validity or the amount of their individual claims.

---

[2]     State law overtime claims had already been asserted by various plaintiffs in Maryland and California, dating back to November 2005.

**B.      The parties' discovery agreement**

After Plaintiffs swamped the federal courts with the mass filing in July 2007, Plaintiffs' counsel approached counsel for Defendants in an attempt to avoid service of process on multiple defendants in 21 jurisdictions. Defendants agreed to waive service under one condition: that discovery on all Plaintiffs would start immediately. Plaintiffs agreed. Consequently, the parties negotiated and ultimately reached a joint case management agreement. *See* Ex. A (email chain dated 09/25/2007); Ex. B (email chain dated 10/19/2007); Ex. C (joint statement filed in this Court on 10/19/2007); Ex. D (joint statement filed in Tennessee on 10/19/2007).[3] Pursuant to that agreement, the parties committed to, among other things, (1) limiting initial discovery to an exchange of written discovery, thus deferring depositions to a later date, (2) exchanging their written discovery at or after the date on which Defendants accepted service of the complaints, and (3) requesting in each jurisdiction a stay for 180 days of pending case management conferences and any reporting requirements under Fed. R. Civ. P. 16. Exs. C, D. The proposed stay of case management conference and reporting requirements was intended to allow the parties to complete expedited written discovery that the parties believed would focus the issues in dispute and establish sufficient core facts so that settlement could be considered.

Plaintiffs apparently are no longer willing to honor this arrangement, having made absolutely no effort to respond to the discovery Defendants served in this and the other actions on October 28, 2007. On November 15, Plaintiffs filed their motion to transfer the actions to multidistrict litigation. A week later, they began filing motions to stay in the courts in which

---

[3]      Rather than including all case management statements filed to date, Defendants include only the first two such statements (which include the statement filed in this Court). Similar filings have been submitted in Arizona, California, Colorado, Georgia, Illinois, Indiana, Kentucky, Maryland, Missouri, Ohio, South Carolina and Virginia.

their claims are pending. Not surprisingly, the first motion to stay was filed less than a week before their discovery responses were due. To date, Plaintiffs have failed to respond to even a single request for discovery, although every single Plaintiff has been served with Interrogatories, Requests for Production of Documents, and Requests for Admissions pursuant to the Federal Rules of Civil Procedure and the parties' joint discovery agreement. Instead, Plaintiffs have attempted to deal with the pending discovery with a broad brush by offering a pleading entitled "Plaintiffs' Initial Objections to Defendants' Requests for Admissions," purporting to object that to respond to the Requests for Admission in a timely manner would be "unduly burdensome" (although Plaintiffs filed no motion for a stay or a protective order relating to that issue, nor had they reached any agreement with Defendants for late service of discovery responses) and declaring their intent to respond to discovery on a "rolling basis" (although no responses have as of yet been provided to Defendants). Ex. E (Plaintiffs' Initial Objections to Defendants' Requests for Admissions).[4]

Plaintiffs' obvious motive in seeking a stay in this Court – and, indeed, in seeking the transfer to multidistrict litigation – is to prolong any and all discovery on their claims for as long as possible. Plaintiffs' counsel seem to forget that these are *their* cases, filed on behalf of people they now seem reticent to contact for discovery purposes. Yet Plaintiffs filed these actions; they asserted these claims against Defendants; and they have a duty to comply with the discovery

---

[4] This pleading was captioned "In re AIMCO Properties" and identified the case as being before the Judicial Panel on Multidistrict Litigation. Yet the Panel has not determined whether any of the actions will be transferred to multidistrict litigation. Indeed, the motion to transfer was only deemed as having been filed on November 28, 2007 (two days after this pleading was submitted), and the briefing on that motion is far from complete. Unless and until the Panel grants the motion to transfer and orders the transfer of any of the actions, jurisdiction over those actions lies solely with the individual courts in which they were filed. *See* J.P.M.L. Rule 1.5.

obligations under Federal Rules of Civil Procedure, each individual court's rules and procedures, and the agreement reached by the parties. Their refusal to respond to discovery, and to live up to the agreement they negotiated and filed jointly with the courts, cannot be sanctioned. Indeed, if they cannot meet their discovery obligations, their cases should be dismissed.

## II.    Legal Analysis

### A.    Legal framework

The multidistrict litigation statute, 28 U.S.C. § 1407, allows the Judicial Panel on Multidistrict Litigation (the "Panel") to transfer civil actions that involve common questions of fact to another district for coordinated pretrial proceedings where the Panel determines that such a transfer "will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). To achieve such a transfer, the moving party must show (1) that there are common questions of fact, (2) that the transfer will serve the convenience of the parties and witnesses, and (3) that the transfer will promote the just and efficient conduct of the actions. *See, e.g.*, *In re Nortel Networks Corp. Securities Litig.*, 360 F. Supp.2d 1373, 1374 (Jud.Pan.Mult.Lit. 2005); *In re Not-For-Profit Hospitals/Uninsured Patients Litig.*, 341 F. Supp.2d 1354, 1356 (Jud.Pan.Mult.Lit. 2004).

Defendants will be separately opposing Plaintiffs' motion to transfer these cases to multidistrict litigation. The *Chase* court has already concluded that the plaintiffs throughout the country are not similarly situated and that their claims do not present common questions of fact. There will be no conveniences to the parties or witnesses by such a transfer; nor will a transfer promote the just and efficient conduct of the actions. Thus, this Court should resist Plaintiffs'

urging that merely because they have moved to transfer these cases to multidistrict litigation, that it will be so. As described below, Defendants do not believe that standard has been met.

With regard to discovery, the mere fact that a motion to transfer an action to multidistrict litigation has been filed does not deprive the district court of jurisdiction over that action; nor does it require that any activity in that action be stayed until the motion to transfer is decided. *See, e.g.*, *Manual for Complex Litigation* 220-21 (4th ed. 2004) (citing cases); J.P.M.L. Rule 1.5 ("[t]he pendency of a motion . . . before the Panel concerning transfer . . . of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court"). Indeed, a well-known treatise on multidistrict and other complex litigation warns that "[t]he transferor court should not automatically stay discovery; it needs to consider provisions in local rules that may mandate early commencement of discovery, and an order modifying such provisions' impact on the litigation may be necessary." *Manual for Complex Litigation* 220. And many courts have denied motions to stay – including motions that relate specifically to stays of discovery – based on the individual circumstances of a particular case. *See, e.g.*, *Falk v. Gen. Motors Corp.*, 2007 WL 3106149, at *3-4 (N.D. Cal. 2007); *Hood v. Microsoft Corp.*, 428 F. Supp.2d 537, 541 (S.D. Miss. 2006); *Bertram v. Fed. Express Corp.*, 2006 WL 3388473, at *2-3 (W.D. Ky. 2006); *Waitt v. Merck & Co.*, 2005 WL 1799740, at *3 (W.D. Wash. 2005); *Grider v. Keystone Health Plan Central, Inc.*, 2004 WL 1047840, at *1 (E.D. Pa. 2004); *In re Duke Energy Corp. Securities Litig.*, 2002 WL 1933798, at *1-2 (S.D.N.Y. 2002); *Vivien v. WorldCom, Inc.*, 2002 WL 31640557, at *8 (N.D.Cal. 2002).

A court's power to stay proceedings is incident to its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). This power "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55. Therefore, in determining whether to issue a stay pending the Panel's ruling on a motion to transfer, courts generally consider three factors: (1) the conservation of judicial resources and avoidance of duplicative litigation that will be saved if the cases are consolidated; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the potential prejudice to the non-moving party. *See, e.g.*, *Falk*, 2007 WL 3106149, at *3; *Bertram*, 2006 WL 3388473, at *2. Here, none of these factors support such a stay.

**B.      Few, if any, resources would be saved by a stay of this action**

First, as to the conservation of judicial resources and avoidance of duplicative litigation in the event that the cases are eventually consolidated, there is little benefit to either the Court or the parties in issuing a stay. While Plaintiffs urge that "[t]his action only recently came to this Court," Br. at 5, not only has the action been pending for nearly half a year, but it also relates to claims that Plaintiffs have asserted since *Chase* was filed in August 2003. Moreover, despite Plaintiffs' assertion that "response deadlines [to discovery] are weeks in the future," Br. at 5, Plaintiffs' deadline to respond to Defendants' first round of written discovery has already passed.

Indeed, Plaintiffs' failure to timely respond to Defendants' discovery, and their filing of the motion to stay just prior to their response deadline, confirms that their intent in filing this motion was simply to obtain a stay of their discovery obligations. Yet there can be little benefit in staying discovery *that the parties already agreed to conduct* – and *that relates to claims that*

*have now been pending for these Plaintiffs for nearly two years* – while awaiting a decision by the Panel. When the parties negotiated and filed their joint statements in numerous jurisdictions, they agreed on a coordinated plan to conduct limited written discovery in each of the actions. Defendants served their initial round of discovery over a month ago, and Plaintiffs submitted theirs this week. As agreed, the parties have not scheduled any depositions, but are simply preparing written responses and gathering the documents sought in the discovery requests – responses and documents that will have to be produced at some point regardless of whether a transfer is granted. Given the limited scope of the parties' proceedings at this stage of the litigation, their mutual agreement that this is how they would proceed with the actions, and the fact that Plaintiffs will eventually have to respond to the discovery served by Defendants, a stay is neither warranted nor necessary. *See, e.g.*, *Falk*, 2007 WL 3106149, at *3 (denying motion to stay discovery, in part because the parties "would have to turn over the same documents . . . and . . . depose the same witnesses whether or not these actions are consolidated and transferred").

Moreover, the fact that there are no substantive motions pending also weighs in favor of denying a stay, as there is little likelihood of duplicative or inconsistent rulings if the parties are allowed to proceed. There is also a substantial possibility that the Panel will deny the motion to transfer, particularly given that the parties (all of whom are represented by the same two lead counsel) have already worked together to coordinate discovery and other efforts in these actions, that Plaintiffs' clear motive in obtaining a transfer is to avoid or at least postpone their discovery obligations, and that another court has already found that Plaintiffs are not similarly situated and that their individual claims are legally and factually disparate. If the Panel does indeed deny the motion to transfer, and Plaintiffs are able to obtain a stay during the pendency of that motion, the

parties will have wasted additional months in not proceeding with these already two-year old claims. Plaintiffs will also have succeeded in reneging on the agreement they reached with Defendants and nullifying the case management plan submitted to (and approved by) the courts.

### C.    Plaintiffs will not suffer any hardship or inequity if a stay is denied

Turning to the second factor – the potential hardship and inequity to the moving party if a stay is denied – Plaintiffs will suffer no such hardship or inequity if this action were to continue along the lines the parties envisioned. Plaintiffs contend that without a stay they "will suffer the hardship of simultaneously litigating identical issues in multiple actions and courts" and "would have to address duplicative discovery." Br. at 6. But having filed their various claims in this and other courts, and having asserted these same claims against Defendants for over four years, Plaintiffs can hardly complain that they should have to abide by the obligations the federal and local court rules impose on each and every litigant. Nor can they fairly complain about having to abide by the responsibilities they undertook in reaching a discovery agreement with Defendants.

In truth, there is no present danger of having to litigate identical issues in multiple courts or of having to respond to duplicative discovery, as no substantive motions are pending and each Plaintiff's claim is specific and individual in nature (and, thus, the fact that the same questions were posed to each Plaintiff in discovery is irrelevant). Whether this case is transferred by the Panel has no bearing on duplicative discovery: Plaintiffs will ultimately have to respond to written discovery on an individual basis, or else their claims will be dismissed. Thus, Plaintiffs should not be allowed to further stall any discovery on their claims, but should be directed to either proceed with or dismiss those claims. *See, e.g., Falk*, 2007 WL 3106149, at *3 (denying

motion to stay, in part because the discovery the moving party hoped to avoid "will probably have to be [conducted] at some point regardless of the outcome of the consolidation motion").

### D.    Defendants will suffer prejudice if this action is stayed

As to the final factor – potential prejudice to the non-moving party – Defendants will suffer substantial prejudice if this action is stayed.  Defendants have been forced to defend against these overtime claims for more than four years, producing mountains of discovery along the way, but have yet to obtain any true discovery from Plaintiffs.  The longer such discovery is postponed, the less likely Defendants will receive any meaningful responses from Plaintiffs – particularly given that many of them have not worked for Defendants in years.

For these and other reasons, Defendants negotiated with Plaintiffs to reach an agreement to coordinate discovery in these actions.  As part of that agreement, Defendants consented to accept service of the complaints, agreed to respond to written discovery served by Plaintiffs, and promised to postpone their own efforts to depose any of the Plaintiffs.  If a stay is granted, Defendants will lose their benefit of that bargain, and will have to wait several months more to obtain much-needed discovery from Plaintiffs.  Therefore, the motion to stay should be denied. *See, e.g.*, *Falk*, 2007 WL 3106149, at *4 (denying motion to stay discovery, in part because "[i]t would be unwise now to stay this action for an indefinite period of time, particularly where both parties would have to take time to ramp up discovery efforts after the stay is lifted").

### III.    Conclusion

For the foregoing reasons, Plaintiffs' motion to stay should be denied.    Likewise, Plaintiffs' motion for expedited treatment of the motion to stay should be denied.

Dated:  December 18, 2007.

Respectfully submitted,

s/Gregory B. Reilly
Littler Mendelson, P.C.
885 Third Avenue, 16th Floor
New York, NY 10022-4834
Phone: (212) 583-2681
Fax: (212) 832-2719

and

John M. Husband, P.C., *Admitted pro hac vice*
Thomas E.J. Hazard, P.C., *Admitted pro hac vice*
Christina F. Gomez, *Admitted pro hac vice*
HOLLAND & HART, LLP
555 Seventeenth Street, Suite 3200
Denver, CO  80202-3979
Phone: (303) 295-8000
Fax: (303) 295-8261
**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2007, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following persons:

Joseph M. Sellers
Charles E. Tompkins
Llezlie L. Green
COHEN, MILSTEIN, HAUSFELD & TOLL P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005

Steig Olson
COHEN, MILSTEIN, HAUSFELD & TOLL P.L.L.C.
152 East 52nd Street, Thirtieth Floor
New York, NY 10022


s/Gregory B. Reilly

# EXHIBITS

**From:** John M. Husband
**Sent:** Tuesday, September 25, 2007 9:17 AM
**To:** 'ctompkins@cmht.com'; 'saziz@cmht.com'
**Subject:** procedures re cases

Tom,
I have idscussed with my client the issues we have been reviewing regarding the various cases.I think we are in agreement on how to proceed at this point, although some of the dates and timing may be different as set out below.
Here is what we propose:
1.You will file Amended Complaints.
2. I will accept service of the Amended Complaints.
3. AIMCO will file Answers to the Amended Complaints 30 days after acceptance of service.
4. We will trade discovery requests in the near future (how about 2 weeks?) so each side can begin the process of getting responses together.
5. We agree that discovery can commence after the Answers to the Amended Complaints have been filed. My client does not want to stage the response time.
6. You will take a first attempt at a court filing we will jointly file with each of the Courts outling our agreed upon discovery process and asking them to hold off scheduling, status and various other conferences as we complete the discovery.
7. We will proceed with the discovery and see where we are at the end of  that process. Hopefully, both of the sides will be in a position to evaluate the various cases.As to the overtime claims we should be in a position to resolve any such claims. We may have to take a test case or two on the on-call issues in one of the courts.
Let me know if this is acceptable.
Thanks.
John



EXHIBIT
A

12/3/2007

| | |
|---|---|
| **From:** | Green, Llezlie [lgreen@CMHT.com] |
| **Sent:** | Friday, October 19, 2007 12:08 PM |
| **To:** | Thomas E. J. Hazard; Christina Gomez |
| **Cc:** | John M. Husband; Tompkins, Charles |
| **Subject:** | RE: AIMCO joint case management statement-h&h redline.DOC |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Dear Tobie & Christine-

In the interest of completing this process in an expedient manner, we will agree to the changes proposed in your most recent version of the case management order. If you would please send me versions for New York and Tennessee with your local counsel's information, I will prepare to file them as soon as you enter an appearance in those jurisdictions.

Regards,
Llezlie



**COHEN MILSTEIN**
HAUSFELD & TOLL

**Llezlie Lloren Green**
Attorney
d: 202.408.4653

Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
1100 New York Avenue NW
Suite 500, West Tower
Washington, D.C. 20005
t: 202.408.4600
f: 202.408.4699
www.cmht.com

-----Original Message-----
**From:** Thomas E. J. Hazard [mailto:tehazard@hollandhart.com]
**Sent:** Wednesday, October 17, 2007 5:13 PM
**To:** Tompkins, Charles; Green, Llezlie
**Cc:** John M. Husband; Christina Gomez; Thomas E. J. Hazard
**Subject:** AIMCO joint case management statement-h&h redline.DOC

Tom and Llezlie: Attached is our latest revisions to the Joint Case Management Statement. The client simply will not agree to the inclusion of footnote 1 in the Statement, as it (a) has nothing to do with what the Statement is trying to accomplish; (2) will only confuse the court as to what we are trying to accomplish by the Statement; and (3) is legal argument suggesting some error was made by the Court in *Chase*, which you are free to make in pleadings filed on your own behalf but not in joint pleadings or filings where we do not agree there was judicial error.

For logistics reasons, I have also added a signature block for local counsel, as orders approving our motions to appear pro hac may not be entered by the time this is submitted. As Llezlie and I discussed, the cases where this needs to be filed soon are the Southern District of New York, Arizona, Colorado, Illinois and Tennessee. We are submitting our motions pro hac in those jurisdictions, and local counsel has already been advised of this Statement for purposes of upcoming scheduling conferences.

Please also note that in the Tennessee case (Burns), the scheduling conference has been moved from October 29 at 3:30 p.m. to October 26, 2007, at 10:30 am. If all parties are in agreement, I am advised by



EXHIBIT
B

local counsel that counsel may appear by telephone.  Please let me know if this is agreeable to you, so that notice can be given to the court.

Please contact me with any questions or comments.

Regards,

Tobie Hazard


**Thomas E.J. Hazard, P.C.**
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, CO 80202
Phone (303) 295-8280
Fax (303) 742-1694
E-mail: tehazard@hollandhart.com



**CONFIDENTIALITY NOTICE:** This message is confidential and may be privileged. If you believe that this email has been sent to you in error, please reply to the sender that you received the message in error; then please delete this e-mail. Thank you.

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

JOHN GALLOWAY, individually, and on )
behalf of all other similarly situated, *et al.* )
                                     )
                                     )
                 Plaintiffs,     )    **Civil Action No.   1:07-cv-06435**
vs.                           )
                                     )
APARTMENT INVESTMENT AND     )
MANAGEMENT COMPANY, *et al.*     )
                                     )
             Defendants.     )
                                     )

## JOINT CASE MANAGEMENT STATEMENT

### I.    BACKGROUND

      Defendant Apartment Investment and Management Company ("AIMCO") is a real estate investment trust ("REIT") which, by and through affiliates, owns apartment communities nationwide. The remaining Defendants are subsidiaries of the REIT which currently employ, or have employed, the Plaintiffs as maintenance personnel at apartment communities located in New York.

      As part of their job duties, maintenance personnel respond to calls from apartment tenants for emergency and non-emergency repairs. Maintenance personnel are sometimes also required to be available to work after regularly scheduled hours on an on-call basis. Plaintiffs allege that Defendants did not pay Plaintiffs either for all the time worked while on-call or for time spent waiting to receive emergency service requests during their on-call time. Defendants contend they pay their maintenance personnel for time spent responding to tenant calls but contend they are not legally obligated to pay maintenance personnel for the time they spend engaged in non-work activities during their on-call time.



EXHIBIT

C

Plaintiffs' Amended Complaint asserts two separate claims for relief under wage and hour laws. First, Plaintiffs allege that they were not paid for hours worked in excess of 40 in a workweek spent responding to emergency tenant service requests while they were on-call (the "unpaid overtime claim"). Second, some, but not all, Plaintiffs allege that their ability to engage in personal pursuits while "on-call" was so limited that the time they spent "on call" waiting to receive emergency service requests from tenants should be compensable ("the waiting time claim"). Defendants deny the allegations of both claims.

The case before this Court is the result of a decision by the United States District Court for the District of Columbia denying certification of a nationwide collective action and class action suit. On August 7, 2003, certain maintenance technicians employed by Defendants filed in the United States District Court for the District of Columbia a collective and class action suit captioned *Chase v. AIMCO*, Civ. No. 1:03-CV-01683(JR). The plaintiffs in *Chase* made the same basic allegations as the Plaintiffs in this case. However, unlike this case, the plaintiffs in *Chase* sought certification of a nationwide collective action pursuant to § 216(b) of the Fair Labor Standards Act, and the certification of Maryland and California state law claims pursuant to Fed. R. Civ. P. 23. Judge James Robertson conditionally certified the case as a collective action, but dismissed the state law claims. Judge Robertson subsequently decertified the collective action, finding the facts incompatible with a nationwide collective action. The court in *Chase* then dismissed without prejudice the claims of the individuals who worked at properties outside of the District of Columbia, but allowed the claims of individuals who had filed consents and worked at properties located in the District of Columbia to proceed. The eighteen Plaintiffs in this case are individuals from New York who opted into the *Chase* litigation. Plaintiffs who were similarly dismissed from the *Chase* case and work (or have worked) at AIMCO properties located in other states have filed cases similar to this one in federal court in their respective

2

states. Including this case, twenty-two cases are currently pending across the country.

## II.    DISCOVERY PLAN

Given that similar cases to this one have been filed in twenty-one jurisdictions across the country, the parties have agreed to limit initial discovery to an exchange of interrogatories, requests for production of documents, and requests for admissions, and to defer depositions to a later date. The parties believe that by so limiting initial discovery, the parties can resolve many of the claims before this Court or, at a minimum, narrow the issues that are truly in dispute. The parties also believe that limiting initial discovery as described herein will yield sufficient information such that settlement of Plaintiffs' claims may be a real possibility.

Therefore, the parties request that the Court order the following schedule for discovery:

(1) The Plaintiffs have filed an Amended Complaint and Defendants' counsel has agreed to accept service on Defendants' behalf. Defendants shall file an Answer to the Amended Complaint within thirty (30) days of the date they accept service of the Amended Complaint.

(2) The parties will exchange interrogatories, requests for production of documents, and requests for admissions on the date Defendants' counsel accepts service of the Amended Complaint on Defendants' behalf. The parties will not engage in deposition discovery at this juncture.

(3) The parties will exchange disclosures pursuant to Fed. R. Civ. P. 26(a)(1) at the time they respond to interrogatories, requests for production of documents and requests for admissions.

(4) The parties also jointly propose that the Court stay any pending case management conferences, as well as any reporting requirements pursuant to Fed. R. Civ. P. 16, for 180 days from the date of this Joint Case Management Statement to permit the discovery

identified above.

Dated: October 19, 2007

Respectfully submitted,

By: ____/s/Gregory Reilly_____
     Gregory Reilly
     LITTLER MENDELSON, P.C.
     885 Third Avenue, 16th Floor
     New York, N.Y. 10022-4834
     Telephone:  (212) 583-2861
     Facsimile:  (212) 832-2719

     and

     John M. Husband, P.C.
     Thomas E.J. Hazard, P.C.
     Christina F. Gomez
     Tanya E. Milligan
     HOLLAND & HART, LLP
     555 Seventeenth Street
     Suite 3200
     Denver, CO  80202
     Telephone:  (303) 295-8000
     Facsimile:  (303) 295-8261
     *Admission Pro Hac Vice Pending*

*Attorney for Defendants*

By: _____/s/ Llezlic L. Green_____
     Joseph M. Sellers
     Charles E. Tompkins
     Llezlie L. Green (lg-0911)
     COHEN, MILSTEIN, HAUSFELD &
     TOLL P.L.L.C.
     1100 New York Avenue, N.W.
     Suite 500, West Tower
     Washington, DC  20005
     Telephone:  (202) 408-4600
     Facsimile:  (202) 408-4699

     and

     Steig Olson (so-0414)
     COHEN,  MILSTEIN,  HAUSFELD &
     TOLL, P.L.L.C.
     152 East 52nd Street
     Thirtieth Floor
     New York, N.Y. 10022
     Telephone:  (212) 838-7797
     Facsimile:  (212) 838-7745

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| BARRY BURNS, *et al.* | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | **Civil Action No.   3:07-cv-00746** |
| | ) | |
| APARTMENT INVESTMENT AND | ) | |
| MANAGEMENT COMPANY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## JOINT CASE MANAGEMENT STATEMENT

### I.    BACKGROUND

Defendant Apartment Investment and Management Company ("AIMCO") is a real estate investment trust ("REIT") which, by and through affiliates, owns apartment communities nationwide.  The remaining Defendants are subsidiaries of the REIT which currently employ, or have employed, the Plaintiffs as maintenance personnel at apartment communities located in Tennessee.

As part of their job duties, maintenance personnel respond to calls from apartment tenants for emergency and non-emergency repairs.  Maintenance personnel are sometimes also required to be available to work after regularly scheduled hours on an on-call basis.  Plaintiffs allege that Defendants did not pay Plaintiffs either for all the time worked while on-call or for time spent waiting to receive emergency service requests during their on-call time.  Defendants contend they pay their maintenance personnel for time spent responding to tenant calls but contend they are not legally obligated to pay maintenance personnel for the time they spend engaged in non-work activities during their on-call time.

EXHIBIT

D

Plaintiffs' Amended Complaint asserts two separate claims for relief under wage and hour laws. First, Plaintiffs allege that they were not paid for hours worked in excess of 40 in a workweek spent responding to emergency tenant service requests while they were on-call (the "unpaid overtime claim"). Second, some, but not all, Plaintiffs allege that their ability to engage in personal pursuits while "on-call" was so limited that the time they spent "on call" waiting to receive emergency service requests from tenants should be compensable ("the waiting time claim"). Defendants deny the allegations of both claims.

The case before this Court is the result of a decision by the United States District Court for the District of Columbia denying certification of a nationwide collective action and class action suit. On August 7, 2003, certain maintenance technicians employed by Defendants filed in the United States District Court for the District of Columbia a collective and class action suit captioned *Chase v. AIMCO*, Civ. No. 1:03-CV-01683(JR). The plaintiffs in *Chase* made the same basic allegations as the Plaintiffs in this case. However, unlike this case, the plaintiffs in *Chase* sought certification of a nationwide collective action pursuant to § 216(b) of the Fair Labor Standards Act, and the certification of Maryland and California state law claims pursuant to Fed. R. Civ. P. 23. Judge James Robertson conditionally certified the case as a collective action, but dismissed the state law claims. Judge Robertson subsequently decertified the collective action, finding the facts incompatible with a nationwide collective action. The court in *Chase* then dismissed without prejudice the claims of the individuals who worked at properties outside of the District of Columbia, but allowed the claims of individuals who had filed consents and worked at properties located in the District of Columbia to proceed. The twenty-four Plaintiffs in this case are individuals from Tennessee who opted into the *Chase* litigation. Plaintiffs who were similarly dismissed from the *Chase* case and work (or have worked) at AIMCO properties located in other states have filed cases similar to this one in federal court in

2

their respective states. Including this case, twenty-two cases are currently pending across the country.

## II.  **DISCOVERY PLAN**

Given that similar cases to this one have been filed in twenty-one jurisdictions across the country, the parties have agreed to limit initial discovery to an exchange of interrogatories, requests for production of documents, and requests for admissions, and to defer depositions to a later date. The parties believe that by so limiting initial discovery, the parties can resolve many of the claims before this Court or, at a minimum, narrow the issues that are truly in dispute. The parties also believe that limiting initial discovery as described herein will yield sufficient information such that settlement of Plaintiffs' claims may be a real possibility.

Therefore, the parties request that the Court order the following schedule for discovery:

(1) The Plaintiffs have filed an Amended Complaint and Defendants' counsel has agreed to accept service on Defendants' behalf. Defendants shall file an Answer to the Amended Complaint within thirty (30) days of the date they accept service of the Amended Complaint.

(2) The parties will exchange interrogatories, requests for production of documents, and requests for admissions on the date Defendants' counsel accepts service of the Amended Complaint on Defendants' behalf. The parties will not engage in deposition discovery at this juncture.

(3) The parties will exchange disclosures pursuant to Fed. R. Civ. P. 26(a)(1) at the time they respond to interrogatories, requests for production of documents and requests for admissions.

(4) The parties also jointly propose that the Court stay any pending case management conferences, as well as any reporting requirements pursuant to Fed. R. Civ. P. 16, for 180

3

days from the date of this Joint Case Management Statement to permit the discovery identified above.

To the extent the Court is amenable to the proposals set forth herein, the parties have attached hereto a proposed order.

Dated: October 19, 2007                    Respectfully submitted,


By:    /s/Antonio Robinson                 By:    /s/ Llezlie L. Green
       Antonio Robinson                           Joseph M. Sellers (*pro hac vice*)
       LITTLER MENDELSON P.C.                     Charles E. Tompkins (*pro hac vice*)
       3348 Peachtree Rd., N.W.                   Llezlie L. Green (*pro hac vice*)
       Suite 1100                                 COHEN, MILSTEIN, HAUSFELD &
       Atlanta, GA 30326-1007                     TOLL P.L.L.C.
       Telephone: (404) 760-3962                  1100 New York Avenue, N.W.
       Facsimile:  (404) 233-2361                 Suite 500, West Tower
       *Pro Hac Vice Pending*                     Washington, DC 20005
                                                  Telephone: (202) 408-4600
       and                                        Facsimile:  (202) 408-4699

       Camille Webb Steward (TNBN. 21068)         and
       MILLER & MARTIN
       1200 One Nashville Place
       150 Fourth Avenue North                    Gordon Ball (TN Bar No. 001135)
       Nashville, Tennessee 37219                 BALL & SCOTT
       Telephone: (865) 744-8528                  Bank of America Building
       Facsimile: (865) 744-8628                  550 West Main Avenue, Suite 750
                                                  Knoxville, Tennessee 37902
       and                                        Telephone: (865) 525-7028
                                                  Facsimile:  (865) 525-4679
       John M. Husband, P.C.
       Thomas E.J. Hazard, P.C.
       Christina F. Gomez                         *Attorneys for Plaintiffs*
       Tanya E. Milligan
       HOLLAND & HART, LLP
       555 Seventeenth Street
       Suite 3200
       Denver, CO 80202
       Telephone: (303) 295-8000
       Facsimile: (303) 295-8261
       *Admission Pro Hac Vice Pending*

*Attorney for Defendants*


                                    4

5

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| BARRY BURNS, *et al.* | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | **Civil Action No.  3:07-cv-00746** |
| | ) | |
| APARTMENT INVESTMENT AND | ) | |
| MANAGEMENT COMPANY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

---

## [PROPOSED] ORDER

---

Upon consideration of the Joint Case Management Statement submitted by the parties, IT IS this ___ day of October, 2007, by the United States District Court for the Middle District of Tennessee, hereby ORDERED THAT:

1.    Defendants shall file an Answer to the Amended Complaint within thirty (30) days of the date they accept service of the Amended Complaint.

2.    The parties will exchange interrogatories, requests for production of documents, and requests for admissions on or after the date Defendants' counsel accepts service of the Amended Complaint on Defendants' behalf.  The parties will not engage in deposition discovery at this juncture.

3.    The parties will exchange disclosures pursuant to Fed. R. Civ. P. 26(a)(1) at the time they respond to interrogatories, requests for production of documents and requests for admissions.

4.    Any pending case management conferences, as well as any reporting requirements pursuant to Fed. R. Civ. P. 16, are hereby stayed for 180 days from the date of the

Joint Case Management Statement to permit the discovery identified above.

_____

Aleta A. Trauger
United States District Judge

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
|  | ) | |
|  | ) | |
|  | ) | |
|  | ) | |
| **In re AIMCO PROPERTIES, et al.** | ) | |
| **Fair Labor Standards Act Litigation** | ) | MDL Docket No. _____ |
|  | ) | |
|  | ) | |
|  | ) | |
|  | ) | |

## PLAINTIFFS' INITIAL OBJECTIONS TO DEFENDANTS' REQUESTS FOR ADMISSIONS

1.    Plaintiffs present these initial objections to Defendants' Requests for Admissions ("Requests") served on Plaintiffs.[1] Plaintiffs expressly reserve the right to supplement these objections as further information becomes available.

---

[1]    "Plaintiffs" refers to all Named Plaintiffs upon whom discovery has been served in the following related actions: *Bone et al. v. Apartment Investment and Management Company et al.*, No. 2:07-cv-01311 (N.D. Ala. filed July 16, 2007); *Boland et al. v. Apartment Investment and Management Company et al.*, No. 2:07-cv-01370 (D. Ariz. filed July 16, 2007); *Campbell et al. v. Apartment Investment and Management Company et al.*, No. 3:07-cv-03640 (N.D. Cal. filed July 16, 2007); *Dominguez et al. v. Apartment Investment and Management Company et al.*, No. 3:05-cv-04824 (N.D. Cal. filed Nov. 23, 2005); *Dominguez et al. v. AIMCO Properties, L.P. et al.*, No. 3:07-cv-03245 (N.D. Cal. filed June 20, 2007) ); *Hill et al. v. Apartment Investment and Management Company et al.*, No. 07-cv-01492 (D. Colo. filed July 16, 2007); *Angulo et al. v. Apartment Investment and Management Company et al.*, No. 3:07-cv-643-J-16JRK (M.D. Fla. filed July 16, 2007); *Thomas et al. v. Apartment Investment and Management Company et al.*, No. 1:07-cv-1638 (N.D. Ga. filed July 16, 2007); *Bishop et al. v. Vensons et al.*, No. 1:07-cv-03952 (N.D. Ill. filed July 13, 2007) (*"Bishop"*); *Common et al. v. Apartment Investment and Management Company et al.*, No. 1:07-cv-0921 (S.D. Ind. filed July 16, 2007); *Randolph et al v. Apartment Investment and Management Company et al*, No. 3:07CV-371-H (W.D. Ky. filed July 16, 2007*)*; *Aceituno et al. v. Apartment Investment and Management Company et al.*, No. 8:07-cv-01869 (D. Md. filed July 16, 2007); *Cruz et al. v. AIMCO Properties, LP et al.*, No. 8:07-cv-01394 (D. Md. filed May 16, 2007); *Barton et al. v. Apartment Investment and Management Company et al.*, No. 8:06-cv-00192 (D. Md. filed Jan. 23, 2006); *Birchett et al. v. Apartment Investment and Management Company et al.*, No. 2:07-cv-12939 (E.D. Mich. filed July 16, 2007); *Conner et al. v. Apartment Investment and Management Company LP et al.*, No. 4:07-cv-00502 (W.D. Mo. filed July 16, 2007); *Hulse et al. v. Apartment Investment and Management Company et al.*, No. 3:07-cv-03256 (D.N.J. filed July 16, 2007); *Galloway v. Alvarez et al.*, No. 1:07-cv-06435 (S.D.N.Y. filed July 16, 2007); *Crawford et al. v. Apartment Investment and Management Company et al.*, No. 3:07-cv-274 (W.D.N.C. filed July 16, 2007);

1



EXHIBIT
E

2.    Plaintiffs object to the requirement that the Responses to the Requests be due within thirty days because, under the unique circumstances of this case, the thirty day requirement is unduly burdensome. *See* Fed. R. Civ. P. 26(c). Responding to these requests will require an extraordinary amount of work, including an analysis of the record and consultation with hundreds of clients. The difficulty in completing this project is compounded by Plaintiffs' efforts to respond to identical discovery served nearly simultaneously by the Defendants upon hundreds of plaintiffs in twenty related cases. For that reason, Plaintiffs intend to respond to the Requests on a rolling basis beginning in early December 2007. All Responses will be completed consistent with the written agreement by the parties, embodied in various case management statements and proposed orders filed in the related actions across the country, that all written discovery will be completed within 180 days, or such lesser time as ordered by the courts.

Dated: November 26, 2007                    Respectfully submitted,

                                            Joseph M. Sellers (D.C. Bar No. 318410)
                                            Charles E. Tompkins  (D.C. Bar No. 459854)
                                            Llezlie L. Green (D.C. Bar No. 484051)
                                            COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
                                            1100 New York Avenue, N.W.
                                            West Tower - Suite 500
                                            Washington, D.C.  20005
                                            Tel.:  (202) 408-4600
                                            Fax:   (202) 408-4699

*Davis et al. v. Apartment Investment Management Company et al.*, No. 1:07-cv-542 (S.D. Ohio filed July 16, 2007); *Mitchell et al. v. Apartment Investment Management Company et al.*, No. 2:07-cv-02915 (E.D. Pa. filed July 16, 2007); *Cordle et al. v. Apartment Investment Management Company et al.*, No. 7:07-cv-02175 (D.S.C. filed July 16, 2007); *Burns et al. v. Apartment Investment and Management Company et al.*, No. 3:07-cv-00746 (M.D. Tenn. filed July 16, 2007); *Bell v. Apartment Investment and Management Company*, No. 2:07-cv-00291 (E.D. Tex. filed July 16, 2007); *Dunbar et al. v. Apartment Investments and Management Company et al.*, No. 3:07-cv-00034 (W.D. Va. Filed July 16, 2007). As such, this objection applies to all the plaintiffs upon whom Requests for Admissions have been served in those cases.

2

<u>**CERTIFICATE OF SERVICE**</u>

I, Llezlie L. Green, hereby certify that on this 26th day of November, 2007, I caused

a copy of Plaintiffs' Initial Objections To Defendant's Requests for Admission to be served

by electronic mail and UPS overnight mail on the following:

        John Husband, Esq.
        Thomas E. J. Hazard, Esq
        Cristina F. Gomez, Esq.
        Tanya E. Milligan, Esq.
        Holland & Hart, LLP
        555 Seventeenth Street, Suite 3200
        Denver, Colorado 80202-3979

                                             Llezlie L. Green

# APPENDIX OF
# UNPUBLISHED CASES

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3388473 (W.D.Ky.)
**(Cite as: 2006 WL 3388473 (W.D.Ky.))**

Only the Westlaw citation is currently available.

United States District Court, W.D. Kentucky,
Louisville Division.
Charles BERTRAM, et al., Plaintiffs,
v.
FEDERAL EXPRESS CORPORATION, et al.,
Defendants.
Civil Action No. 05-28-C.

Nov. 20, 2006.

Thomas E. Carroll, Lance W. Turner, Carroll &
Turner, PSC, Monticello, KY, for Plaintiffs.

Edward L Stanton, III, Justin M. Ross, Federal
Express Corporation, Memphis, TN, Jamie K. Neal,
Jason P. Thomas, Mark W. Leach, Lee K. Garlove,
Stites & Harbison, PLLC, Timothy D. Lange,
Benson, Byrne & Risch, Llp, Louisville, KY, Chris
A. Hollinger, Christopher T. Scanlan, O'Melveny &
Myers, Llp, San Francisco, CA, for Defendants.

*MEMORANDUM OPINION AND ORDER*

JENNIFER B. COFFMAN, District Judge.

*1 This matter is before the court on the defendant,
FedEx Ground Package System, Inc.'s ("FedEx
Ground"), motion to stay proceedings pending a
transfer decision by the Judicial Panel on
Multidistrict Litigation (DE 54). The court, having
reviewed the record and being otherwise sufficiently
advised, will deny the defendant's motion.

On September 26, 2006, the defendants filed a
Notice of Related Action (hereinafter, "Notice") with
the Judicial Panel on Multidistrict Litigation
(hereinafter, "Panel") requesting a transfer of this
action to the Northern District of Indiana for
coordinated pre-trial proceedings. The Notice
indicated that this action involves "comparable
allegations, and comparable related claims" as
other cases against FedEx Ground that had previously
been transferred to the Northern District of Indiana
by the Panel. The Panel has yet to rule on FedEx
Ground's Notice, however, and FedEx Ground now
asks this court to stay the current action pending a
determination by the Panel on its request for transfer.

A district court has the inherent power to stay its
proceedings. *Rivers v. Walt Disney Co.,* 980 F.Supp.
1358, 1360 (C.D.Cal.1997). Although, "[a]s a matter
of individual preference, many district judges elect to
suspend pretrial proceedings in cases in which a
Panel transfer order is anticipated," "the mere
pendency of a motion ... before the Panel in no way
limits the jurisdiction of the court in which the action
is pending." Stanley A. Weigel, *The Judicial Panel
on Multidistrict Litigation, Transferor Courts and
Transferee Courts,* 78 F.R.D. 575, 576, 576 n. 11
(1978). Instead, whether discovery should be stayed
in a potential transferor court pending the Panel's
decision on a motion to transfer "is within the sole
discretion of the transferor judges ." *In re Air Crash
Disaster at Paris, France, on March 3, 1974,* 376
F.Supp. 887, 888 (J.P.M.L.1974). When considering
a motion to stay, a district judge should consider: (1)
the potential prejudice to the non-moving party; (2)
the hardship and inequity to the moving party if the
action is not stayed; and (3) the judicial resources that
would be saved by avoiding duplicative litigation if
the cases are in fact consolidated. *Rivers,* 980 F.Supp.
at 1360.

FedEx Ground claims that, because this case is likely
to be transferred to the Northern District of Indiana,
any proceedings conducted in this court will
needlessly duplicate proceedings that will be or
currently are being conducted in the coordinated pre-
trial proceedings. Thus, FedEx Ground believes that
judicial economy and the interests of the parties will
be best-served by staying this litigation. The
plaintiffs respond that this case is unlikely to be
transferred by the Panel and that a stay would unduly
prejudice them by limiting their ability to conduct
discovery in this forum or in the transferee court until
a transfer order is entered.

On August 10, 2005, the Panel consolidated fifteen
actions against FedEx Ground in the Northern
District of Indiana (hereinafter referred to as "the
MDL proceedings") based on the fact that all of these
cases "share factual questions arising from the
classification of certain package delivery drivers as
independent contractors rather than employees." *In re
FedEx Ground Package Sys., Inc., Employment
Practices Litigation (No. II),* 381 F.Supp.2d 1380,

1381 (J.P.M.L.2005). In their motion to stay, FedEx Ground argues at length that the plaintiffs' breach of contract/promissory estoppel/fraud claims are sufficiently related to these consolidated cases that a stay is necessary to eliminate wasteful pre-trial proceedings in this court. The plaintiffs, however, moved to voluntarily dismiss these claims on October 5, 2006, and the court entered an order granting their motion on October 30, 2006. The only claims currently before the court are the plaintiffs' malicious prosecution, defamation, and negligence causes of action, which relate to the plaintiffs' allegations that the defendants falsely accused Bertram of stealing golf clubs and encouraged the prosecution of criminal charges against him as a result of his labor union affiliation.

*2 Although the Panel has already held that "the presence of additional or differing legal theories" does not demonstrate that consolidation is unwarranted, *see In re FedEx Ground,* 381 F.Supp.2d at 1381, the court finds that, even if a transfer order regarding this action is eventually issued by the Panel, this case is sufficiently distinct from those currently pending in the Northern District of Indiana that the risk of unnecessary duplication is minimal at best. The multidistrict litigation in Indiana focuses on the alleged harms resulting, as a general matter, from FedEx Ground's classification of delivery drivers as contractors as opposed to employees. This case, however, centers on the plaintiffs' contentions that Bertram was *specifically* retaliated against as a result of his pro-union sentiment. The underlying facts, legal theories, and scope of FedEx Ground's alleged wrongful conduct in this case all differ from the MDL proceedings; only the names of the parties in the forums are the same. Because there is little overlap of the relevant issues in this case and those in the MDL proceedings, it follows that the resources of the parties and the court are unlikely to be duplicated in the event a stay is denied.

FedEx Ground also claims that, because this case and the MDL proceedings involve factual issues related to FedEx Ground's alleged anti-union animus, the risk of overlapping discovery on this point warrants a stay of this case pending the Panel's transfer decision. Specifically, FedEx Ground claims that allowing both this case and the MDL proceedings to move forward at the same time presents the risk of inconsistent orders and unnecessarily burdensome discovery demands. The court concedes that FedEx Ground's alleged anti-

union bias is an integral part of the plaintiffs' claims before this court and has been the subject of discovery in the MDL proceedings. Nonetheless, on August 31, 2006, Magistrate Judge Dave Whalin entered an order on this issue granting in part and denying in part a motion for protective order filed by the defendant Federal Express Corporation ("FedEx Corp."). Magistrate Judge Whalin ruled that the plaintiffs could obtain discovery on the subject of union activities involving FedEx Corp. that occurred within *only* the year prior to February 17, 2004; that involved Bertram or any similarly employed independent contractors during the same time frame; and that involved the same general delivery area in which Bertram worked. DE 41, at 7. Because the permissible scope of discovery regarding FedEx Corp.'s alleged anti-union sentiment has been so narrowed in this case, any information collected on that issue should only minimally overlap with discovery that may occur in the MDL proceedings. Further, Magistrate Judge Whalin's August 31, 2006, order demonstrates that the parties have litigated, and the court has resolved, this issue. Thus, it is unlikely that the court or the parties will need to expend more resources in deciding it if this case is not stayed. [FN1]

> FN1. In its Notice to the Panel, FedEx Ground argued that Magistrate Judge Whalin's order "arose in the context of a discovery dispute between Bertram and Federal Express Corp., a co-defendant and separate and distinct entity from FedEx Ground." Notice, at 3 n. 2. FedEx Ground therefore claimed that the order did not in any way determine FedEx Ground's discovery obligations and that the issue would need to be resolved again by this court or the transferee forum. *Id.* FedEx Ground's argument on this point is accurate, and, if it wishes to relitigate under a different name the same issues that were conclusively resolved by Magistrate Judge Whalin, it may do so. The court notes, however, that Magistrate Judge Whalin's order was "written in sufficiently broad terms so that its ruling may be applied to any union-related discovery request not previously identified in the parties' motion papers." DE 41, at 7 n. 1. As a result, any reopening of this issue by FedEx Ground would not create a substantial risk of the cumulation of judicial resources.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

In a similar vein, FedEx Ground argues that the plaintiffs cannot complain of any prejudice they may experience as a result of a stay when they themselves caused a delay by the last-minute addition of FedEx Ground to this action. The plaintiffs' original complaint asserted claims against "Federal Express Corporation and Federal Express Corporation d/b/a Federal Express Ground." In the defendants' answer, they asserted that they had no knowledge of any entity called "Federal Express Corporation d/b/a Federal Express Ground." The defendants also failed to file any corporate disclosure statement "with its first appearance, pleading, petition, motion, response, or other request," as required by Fed.R.Civ.P. 7.1. On May 25, 2006, after being ordered to do so by the court, the defendants finally filed a corporate disclosure statement indicating that the entity the plaintiffs referred to as "Federal Express Corporation d/b/a Federal Express Ground" was indeed FedEx Ground Package System, Inc. The plaintiffs then amended their complaint accordingly. Certainly, the plaintiffs had the responsibility to plead their case against the proper defendants. But, given that compliance with the Federal Rules of Civil Procedure by the defendants would have eliminated any confusion on this issue, they cannot blame the plaintiffs for the delay occasioned by the late addition of FedEx Ground as a party in this case.

*3 In sum, the court finds that the factual and legal issues in this case and the MDL proceedings are sufficiently dissimilar that, even in the event this case is transferred by the Panel, discovery and other pre-trial activity in this case is unlikely to be materially inconsistent with or duplicative of that in the MDL proceedings. Thus, FedEx Ground's fears of undue prejudice and expense if a stay is not granted are largely unfounded. Alternatively, the plaintiffs face a risk of prejudice if the court grants FedEx Ground's motion to stay. If this action is stayed, the plaintiffs will be unable to proceed with discovery in this forum or the Northern District of Indiana until the Panel reaches a decision. While the defendants argue that a transfer order should be issued by the Panel soon, their Notice was filed on September 26, 2006, and no indication has yet been received by the parties or the court from the Panel regarding the Notice. The

plaintiffs and the court should not be forced to wait an indeterminate length of time to proceed with the resolution of a straightforward tort action. After weighing the competing interests at stake on this issue, the court concludes that a stay of this case is unnecessary. Accordingly,

IT IS ORDERED that Fed Ex Ground's motion to stay proceedings pending a transfer decision by the Judicial Panel on Multidistrict Litigation (DE 54) is DENIED.

Not Reported in F.Supp.2d, 2006 WL 3388473 (W.D.Ky.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy
Slip Copy, 2007 WL 3101649 (N.D.Cal.)
**(Cite as: Slip Copy)**

◼Falk v. General Motors Corp.
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Roy FALK, Lee Kratzer and Barbara McRae, on
behalf of themselves and all others similarly situated,
Plaintiffs,
v.
GENERAL MOTORS CORPORATION, a Delaware
Corporation, Defendant.
No. C 07-01731 WHA.

Oct. 22, 2007.

Alexander E. Barnett, The Mason Law Firm, LLP,
New York, NY, Beth E. Terrell, Kim D. Stephens,
Tousley, Brain Stephens PLLC, Seattle, WA, Gary E.
Mason, The Mason Law Firm, LLP, Washington,
DC, Kevin L. Oufnac, Kahn Gauthier Swick, LLC,
New Orleans, LA, Michael Francis Ram, Karl Olson,
Levy, Ram & Olson LLP, San Francisco, CA, for
Plaintiffs.
Jacqueline Maria Jauregui, Amand Keith Mines,
James Ladd Nelson, Sedgwick, Detert, Moran &
Arnold LLP, Los Angeles, CA, Micki S. Singer,
Sedgwick Detert Moran & Arnold LLP, San
Francisco, CA, for Defendant.

ORDER DENYING MOTION TO STAY
WILLIAM ALSUP, United States District Judge.

INTRODUCTION

*1 In this putative consumer-products class action,
defendants move for a stay. Defendants have filed a
motion with the Judicial Panel on Multi-
DistrictLitigation to consolidate this action with two
other actions filed in different states. Plaintiffs agree
that the three actions should be consolidated, but
parties disagree on where they should ultimately be
transferred. Defendant wishes to stay this action
pending the outcome of the consolidation motion.
Parties are well into conducting discovery for
plaintiffs' upcoming class certification motion. This
action will not be stayed and discovery will proceed
as scheduled. The Court is, however, willing to
consider continuing the schedule for plaintiffs' class
certification motion by one month, provided parties
complete the scheduled discovery. Accordingly

defendant's motion to stay is DENIED.

STATEMENT

Plaintiffs in this action are California residents who
purchased trucks or sport utility vehicles from
defendant General Motors between 2003 and 2007.
In the case of each plaintiff, the speedometer on his
or her vehicle ceased to function properly after the
expiration of the vehicle's warranty. Plaintiffs claim
damages suffered on account of these broken
speedometers. Allegedly, GM knew of the defect but
failed to inform consumers.

This action was filed on March 27, 2007. It purports
to represent a class of all California residents who
purchased certain GM light trucks and sport utility
vehicles between 2003 and 2007. Plaintiffs asserted
claims under California's Consumer Legal Remedies
Act and Unfair Competition Law, as well as claims
for fraud by omission and unjust enrichment. An
order dated July 3, 2007, granted defendant's motion
to dismiss the unjust enrichment claim.

Thereafter, plaintiffs served GM with discovery
requests on June 21, 2007. GM responded, but
plaintiffs believed the responses to be incomplete and
insufficient (Olson Decl. ¶ 8). Parties met and
conferred regarding discovery thereafter, and such
meetings are, according to plaintiffs, still ongoing.
Plaintiffs have also noticed depositions of GM
personnel for the week of October 23, 2007, which,
due to scheduling conflicts, are slated to occur the
first week in November (id. at ¶ 10). Plaintiffs have
also started to take third-party discovery from Delphi
and ISM, two of GM's component suppliers.
Plaintiffs' opening brief for class certification is due
on December 4, 2007.

Two similar actions have been filed in federal district
courts in Washington and Oregon. These are *Robert
W. Christensen, Terry M. Kelly and Peggy Kelly, et
al. v. General Motors Corporation,* No. CV 07-0512
HA, and *Kevin Zwicker and Teresa K. Palmer, et al.
v. General Motors Corporation,* No. C 07-0291 JCC.
Both actions stemmed from flaws in the
speedometers of GM light trucks and sport utility
vehicles. They allege that plaintiffs have suffered
damages because of malfunctioning speedometers,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 2
Slip Copy, 2007 WL 3101649 (N.D.Cal.)
(Cite as: Slip Copy)

and that GM failed to disclose the defect.

*2 The *Christensen* action was filed on April 9, 2007 in the District of Oregon. It asserted claims for violation of Oregon's Unfair Trade Practices Act, breach of express warranty, breach of implied warranty, violation of Oregon's Consumer Warranty Act, and unjust enrichment. Parties in that action stipulated to file an amended complaint on July 23, 2007. GM filed a motion to dismiss the amended complaint on August 22, 2007, and parties stipulated to stay the action on September 13, 2007 (Olson Decl. ¶¶ 13-14). The motion to dismiss is still pending.

The *Zwicker* action was filed on February 23, 2007, in the Western District of Washington. Plaintiffs filed an amended complaint on March 16, 2007. GM moved to dismiss on April 19, 2007. The motion was granted as to the unjust enrichment claim and denied as to all others (*id.* at ¶¶ 15-16). The Zwicker plaintiffs have served discovery requests on GM, to which it responded on September 10, 2007 (*id.* at ¶¶ 19-20). GM moved to stay that action, and plaintiffs filed a statement of non-opposition. That action is currently stayed.

Defendant filed a motion for transfer and consolidation of the three actions under 28 U.S.C. 1407 with the Judicial Panel on Multidistrict Litigation on September 6, 2007. Plaintiffs' response was due on September 26, 2007. Oral argument on the motion to consolidate and transfer is scheduled for November 29, 2007. Both parties agree that the three actions should be consolidated, but GM favors transfer to the Western District of Washington, while plaintiffs favor transfer to this district.

### ANALYSIS

The power to grant a temporary stay "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."*Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Nothing requires that an action be stayed when a motion to consolidate and transfer is pending. The Panel's rules state:
The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. 1407 does not

affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court.

J.P.M.L. Rule 1.5. When considering whether to stay proceedings pending a consolidation order, factors to consider include: (1) conserving judicial resources and avoiding duplicative litigation; (2) hardship and inequity to the moving party if the action is not stayed; (3) potential prejudice to the non-moving party. *Rivers v. Walt Disney Co.,* 980 F.Supp. 1358, 1360 (C.D.Cal.1997); *Nielsen v. Merck & Co.,* 2007 WL 806510, *1 (N.D.Cal. May 15, 2007)* (Jenkins, J.).

### 1. CONSERVING JUDICIAL RESOURCES.

GM anticipates that the motion to consolidate the three actions will be granted. The allegations in all three complaints are substantially the same. Plaintiffs in all three actions allege that GM's speedometers in its light trucks and sport utility vehicles are defective, and that GM knew about the defect and failed to tell consumers. All three complaints seek remedies for fraud and for violations of their respective states' consumer laws. In addition, plaintiffs favor consolidation. The only point of contention between parties is where these actions should proceed.

*3 Defendant argues that staying this action now would conserve resources for two reasons. A stay would eliminate duplicative discovery and duplicative work on plaintiffs' motion to certify a class. As to discovery, defendant argues that allowing discovery to proceed now would result in inconsistent rulings and duplicative work. Plaintiffs and defendants have scheduled depositions for the first week in November, and defendant has produced a number of documents. Bringing discovery to a halt at this time would make little sense. Defendant would have to turn over the same documents, and plaintiffs would have to depose the same witnesses whether or not these actions are consolidated and transferred. Defendant also fears inconsistent rulings on discovery. At this time, this action is the only one going forward. Moreover, any harm from inconsistent rulings would be minimal.

Plaintiffs point out that their motion to certify a class must be filed on December 4, 2007, to be heard on January 11, 2007. They argue that this disfavors a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

stay and favors proceeding with discovery. Oral argument in front of the MDL Panel is scheduled for November 29, 2007. It is uncertain when a decision on the motion to consolidate and transfer will issue. Provided the depositions scheduled in the first week of November go forward, it may be wise to continue the date for filing plaintiffs' motion for class certification by about a month, to January 3, 2007. This could prevent some duplicative work that would take place in the event that the actions are consolidated. If that happens, the transferee judge would likely set his or her own schedule for class certification. Accordingly, this factor favors denying the stay while leaving open the possibility of postponing class certification proceedings.

## 2. HARDSHIP TO DEFENDANT.

Costs and financial burden on a party having to defend itself in multiple fora is a factor that favors the entry of a stay pending a decision by a JPML. *The Hertz Corp. v. The Gator Corp.,* 250 F.Supp.2d 421, 427 (D.N.J.2003) (Bassler, J.). GM argues that continuing to conduct discovery and motion practice in this action would drain its time and resources. Plaintiffs are scheduled to depose a number of GM employees in the first week of November. GM's argument ignores the fact that those depositions will probably have to be taken at some point regardless of the outcome of the consolidation motion. Any subsequent discovery issues can be either ruled upon in this Court or settled by the transferee judge.

As to the upcoming deadline for plaintiffs' motion for class certification, GM points out that both parties might needlessly expend time and money. Although plaintiffs' brief is currently due in early December, the motion will not be heard until January. By then, the Panel may have ruled to transfer the action. If this action gets transferred, the transferee court would probably set its own schedule to hear class certification motions. GM's concern is valid, however, it is no reason to stop discovery. Moving the briefing schedule back by a month may be a wise idea provided, however, discovery moves forward as planned.

## 3. PREJUDICE TO PLAINTIFFS.

*4 Plaintiffs argue that they would suffer prejudice if this action were stayed. They point out that trial in this action is set to being on October 6, 2008, less

than one year from now. Also, they are awaiting discovery from GM and have scheduled a number of depositions for the first week in November. This discovery is necessary for filing their motion for class certification, as well as for preparing the rest of their case. Here, the motion to consolidate and transfer is fully briefed before the MDL Panel, oral argument is scheduled for November 29, but it is unknown when a decision will come. It would be unwise now to stay this action for an indefinite period of time, particularly where both parties would have to take time to ramp up discovery efforts after the stay is lifted.

Plaintiffs point out that their class certification brief is due in less than two months time. They wish to keep this schedule in view of the trial date. If the scheduled discovery proceeds, however, there would be little time lost if the class certification schedule were continued by a month. The Panel may make a decision on the consolidation motion before that time. If they decide to consolidate and transfer, the transferee judge will have control over scheduling. If not, then class certification will proceed, while still giving plenty of time to prepare for trial.

On balance, the factors do not favor staying this action. This action is too far advanced to bring everything to a halt. After the stay is lifted, both parties would have to go back over the same ground again. Accordingly, defendant's motion to stay this action is DENIED.

## CONCLUSION

For all of the above-stated reasons, defendant's motion to stay this action pending the resolution of the motion to consolidate and transfer is DENIED.Parties are ordered to go forward with the depositions of GM employees scheduled for the first week in November. The Court is inclined to continue the motion for class certification by one month such that plaintiffs' brief would be due on January 3, 2007, but is fearful a postponement would be used to derail the depositions set now for the first week in November. The parties should notify the Court once the scheduled depositions have taken place, then another order will issue.

IT IS SO ORDERED.

N.D.Cal.,2007.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3101649 (N.D.Cal.)
**(Cite as: Slip Copy)**


Falk v. General Motors Corp.
Slip Copy, 2007 WL 3101649 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                              Page 1
Not Reported in F.Supp.2d, 2004 WL 1047840 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Grider v. Keystone Health Plan Cent., Inc.
E.D.Pa.,2004.
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
Natalie M. GRIDER, M.D. and Kutztown Family
Medicine, P.C., Plaintiffs
v.
KEYSTONE HEALTH PLAN CENTRAL, INC.,
Highmark, Inc., John S. Brouse, Capital Blue Cross,
James M. Mead and Joseph Pfister, Defendants
andTINGLEY SYSTEMS, INC. and Amisys
Synertech Health System Solutions, LLC., Movants
No. Civ.A.2001-CV-05641.

May 5, 2004.

Francis J. Farina, Devon, PA, Joseph A. O‘Keefe,
O‘Keefe & Sher, Kutztown, PA, Kenneth A.
Jacobsen, Media, PA, for Plaintiffs.
Elizabeth K. Ainslie, Schnader, Harrison, Segal &
Lewis LLP., Cheryl A. Krause, John S. Summers,
Mark A. Aronchick, Hangley, Aronchick, Segal &
Pudlin, Philadelphia, PA, Steve D. Shadowen, Eric L.
Bloom, Hangley Aronchick Segal & Pudlin,
Harrisburg, PA, Daniel B. Huyett, Jeffrey D.
Bukowski, Stevens & Lee, Reading, PA, Sandra A.
Girifalco, Stradley, Ronon, Stevens & Young, LLP.,
Philadelphia, PA, Kathleen Taylor Sooy, Tracy A.
Roman, Crowell & Moring LLP., Washington, DC,
for Defendants.
Jeffrey S. Feldman, Montgomery McCracken Walker
& Rhoads, Phila, PA, Suzanne R. Eschrich, Fowler,
White, Boggs, Banker, Tampa, PA, Mark A.
Lieberman, Shaw Pittman LLP., McLean, VA, for
Movants.

ORDER
GARDNER, J.
*1 NOW, this 5th day of May, 2004, upon
consideration of the Motion of Defendants Capital
Blue Cross and Highmark, Inc. for a Stay of All
Proceedings in this Action, which motion was filed
March 17, 2004; upon consideration of Plaintiffs'
Response and Opposition to the Motion of
Defendants Capital Blue Cross and Highmark, Inc.
for a Stay of All Proceedings filed March 24, 2004;
upon consideration of the Response of Defendants
Keystone Health Plan Central and Joseph Pfister to
Motion of Defendants Capital Blue Cross and

Highmark, Inc. for a Stay of All Proceedings in this
Action; upon consideration of the briefs of the
parties,

IT IS ORDERED that defendants' motion for stay is
denied.[FN1]

FN1.Rule 1.5 of the Rules of Procedure of
the Judicial Panel on Multidistrict Litigation
provides in pertinent part:
The pendency of a motion, order to show
cause, conditional transfer order or
conditional remand order before the Panel
concerning transfer or remand of an action
pursuant to 28 U.S.C. § 1407 does not affect
or suspend orders and pretrial proceedings in
the district court in which the action is
pending and does not in any way limit the
pretrial jurisdiction of that court.
J.P.M.L. Rule 1.5. The propriety of the court
issuing a stay where a party has sought to
transfer an action as part of other multi-
district litigation is governed by the
precedent governing issuance of stays in
general, rather than pursuant to 28 U.S.C. §
1407 or the MDL Panel Rules. SeeThe Hertz
Corporation v. The Gator Corporation, 250
F.Supp.2d 421, 424 (D.N.J.2003).
Incidental to a court's power to schedule and
dispose of the cases on its docket, is the
power to stay the proceedings before it when
it promotes the fair and efficient
adjudication of a case. United States of
America v. Breyer, 41 F.3d 884, 893 (3d
Cir.1994). The power to stay "calls for the
exercise of judgment, which must weigh
competing interests and maintain an even
balance."Landis v. North American Co., 299
U.S. 248, 254-255, 57 S.Ct. 163, 158, 81
L.Ed. 153, 166 (1936). The party seeking a
stay must "demonstrate a clear case of
hardship or inequity, if there is even a fair
possibility that the stay would work damage
on another party."Gold v. Johns-Manville
Sales Corporation, 723 F.2d 1068, 1075-
1076 (3d Cir.1983). (Citation omitted.)
Defendants fail to allege a clear case of
hardship or inequity that would require the
court to exercise its discretion in favor of
staying these proceedings. Moreover, we

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 2
Not Reported in F.Supp.2d, 2004 WL 1047840 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

conclude that many of the reasons proffered by defendants for the stay have been known to defendants for quite some time. In particular, the Managed Care MDL Litigation has been pending in the United States District Court for the Southern District of Florida since before the filing of the within matter. The decision of United States District Judge Federico A. Moreno was cited extensively by the undersigned in our September 18, 2003 Order and Opinion regarding defendants' motions to dismiss plaintiffs' Complaint.

In addition, moving defendants Highmark, Inc., and Capital Blue Cross have steadfastly maintained their limited involvement in the day-to-day operations of defendant Keystone Health Plan Central, Inc. ("Keystone") and contend that they are not involved in the conduct alleged by plaintiffs. It does not appear that Keystone is a party to the Florida MDL litigation, but does not oppose this motion.

The determination of whether transfer of this matter to the Managed Care Litigation will be made by the MDL Panel. However, in the within motion, defendants have not asserted any plausible reason for their delay in seeking transfer of this action and have asserted nothing more than bald assertions of prejudice. On the contrary, further delay of these proceedings may prejudice plaintiffs' rights to expeditious adjudication of their claims in the event that the matter is not transferred.

Accordingly, we conclude that the fair and efficient adjudication of this matter is better served by continuing to proceed with this matter on its current schedule until such time as the MDL Panel makes its determination on defendants' request for transfer. Thus, we deny defendants' motion for stay.

E.D.Pa.,2004.
Grider v. Keystone Health Plan Cent., Inc.
Not Reported in F.Supp.2d, 2004 WL 1047840 (E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 1933798 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

▷In re Duke Energy Corp. Securities Litigation
S.D.N.Y.,2002.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
In re: DUKE ENERGY CORP. SECURITIES
LITIGATION
No. 02 CIV.3960 JSR.

Aug. 20, 2002.

Defendant in consolidated securities litigation moved
for temporary stay based on its motion before
Judicial Panel on Multidistrict Litigation (MDL
Panel) to transfer litigation to another district to be
"consolidated" with three actions pending there. The
District Court, Rakoff, J., held that filing of motion
before MDL Panel did not require court to defer its
consideration of motions for appointment of lead
plaintiff and lead counsel or in any other way defer
progress of case.

Motion denied.
West Headnotes
Federal Civil Procedure 170A ⬅️187

170A Federal Civil Procedure
  170AII Parties
    170AII(D) Class Actions
      170AII(D)3 Particular Classes Represented
        170Ak187 k. Stockholders, Investors,
and Depositors. Most Cited Cases
Private Securities Litigation Reform Act did not
require district court to defer consideration of
appointment of lead plaintiff and lead counsel in
consolidated securities litigation, and progress of case
was not in any other way deferred by defendant's
filing before Judicial Panel on Multidistrict Litigation
of motion to transfer litigation to another district to
be "consolidated" with three actions pending there;
case had already been consolidated, and motion was
obvious delaying tactic by defendant, which had lost
prior attempt to transfer cases to the other district.
Securities Exchange Act of 1934, § 21D(a)(3)(B)(ii),
as amended, 15 U.S.C.A. § 78u-
4(a)(3)(B)(ii);Judicial Panel on Multidistrict
Litigation, Rule 1.5, 28 U.S.C.A. foll. § 1407.

MEMORANDUM ORDER
RAKOFF, D.J.

*1 Plaintiffs in the above-captioned matter
(consolidating 13 parallel class actions) allege that
defendant Duke Energy Corp. ("Duke Energy"), and
numerous other persons and entities, violated the
federal securities laws by making material
misrepresentations and omissions in connection with
Duke Energy's financial statements. On July 12, 2002
Duke Energy moved to transfer the 13 cases pending
before this Court to the Western District of North
Carolina where three later-filed actions are pending,
but the Court denied the motion by Memorandum
Order dated July 29, 2002.

Having lost that motion, Duke Energy then moved
before the Judicial Panel on Multidistrict Litigation
("the MDL Panel") on August 8, 2002 to transfer the
13 actions here pending to the Western District of
North Carolina so that they can be "consolidated"
with the three actions pending there.[FN1] On the basis
of that motion, Duke Energy now moves here for a
temporary stay of the instant matter, relying on a
provision of the Private Securities Litigation Reform
Act ("the Reform Act") that states:

> FN1. Ironically, the plaintiffs in one or more
> of the three North Carolina cases have
> indicated that they have no objection to the
> entire case proceeding here and, the Court
> understands, may be moving to have those
> cases transferred here.

If more than one action on behalf of a class asserting
substantially the same claim or claims arising under
this chapter has been filed, and any party has sought
to consolidate those actions for pretrial purposes or
for trial, the court shall not make the determination
required by clause (i) [appointment of lead plaintiff]
until after the decision on the motion to consolidate is
rendered. As soon as practicable after such decision
is rendered, the court shall appoint the most adequate
plaintiff as lead plaintiff for the consolidated actions
in accordance with this paragraph.
15 U.S.C. § 78u-4 (a)(3)(B)(ii). Plaintiffs oppose,
noting that Rule 1.5 of the Rules of Procedure of the
Judicial Panel on Multidistrict Litigation specifies
that:
The pendency of a motion, order to show cause,
conditional transfer order or conditional remand
order before the Panel concerning transfer or remand

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 2
Not Reported in F.Supp.2d, 2002 WL 1933798 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court.

As plaintiffs also note, the Court has already consolidated the 13 actions before it for all purposes, received briefing on the pending motions for appointment of lead plaintiff and lead counsel, ordered further briefing and discovery on the issue, and notified counsel that it expects to appoint lead plaintiff and lead counsel on or about August 27, 2002.

The Court concludes that the filing of a motion before the MDL Panel does not require this Court to defer its consideration of the motions for appointment of lead plaintiff and lead counsel or in any other way defer the progress of this case. *See The Albert Fadem Trust v. WorldCom, Inc.,* 2002 WL 1485257 (S.D.N.Y. July 12, 2002). Nothing in the legislative history of the Reform Act suggests that its above-quoted provision applies to MDL transfer motions, as opposed to ordinary consolidation under the Federal Rules of Civil Procedure (which has already occurred here). Here, moreover, defendants, having lost their motion to transfer, appear to have applied to the MDL Panel for no better reason than as an obvious delaying tactic. It was precisely to obviate such tactics that Rule 1.5 was promulgated. Since a great many of the cases sent to the MDL Panel are securities class actions, the MDL Panel must not agree with defendants' interpretation of the Reform Act as the Panel has not changed Rule 1.5.

*2 Accordingly, defendant Duke Energy's motion for a temporary stay is hereby denied.

SO ORDERED.

S.D.N.Y.,2002.
In re Duke Energy Corp. Securities Litigation
Not Reported in F.Supp.2d, 2002 WL 1933798 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2002 WL 31640557 (N.D.Cal.), 29 Employee Benefits Cas. 1368
**(Cite as: Not Reported in F.Supp.2d)**

▷Vivien v. Worldcom, Inc.
N.D.Cal.,2002.

United States District Court,N.D. California.
Stephen VIVIEN and Edward Prince, individually
and on behalf of a class of all other persons similarly
situated, Plaintiffs,
v.
WORLDCOM, INC., Bernard J. Ebbers, and Scott D.
Sullivan, Defendants.
No. C 02-01329 WHA.

July 26, 2002.

Participants in bankrupt company's retirement plan
brought action company and its top executives under
Employee Retirement Income Security Act (ERISA),
alleging breach of fiduciary duty. On defendants'
motions to dismiss, the District Court, Alsup, J., held
that: (1) defendants were subject to personal
jurisdiction of court, and (2) complaint alleged
breaches of fiduciary duty.

Motions granted in part and denied in part.
West Headnotes
[1] Federal Courts 170B ☞76.35

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk76 Actions Against Non-Residents;
"Long-Arm" Jurisdiction in General
                170Bk76.35 k. Other Particular Types
of Cases. Most Cited Cases
Because nationwide service of process is authorized
in ERISA actions, court has personal jurisdiction
over any defendant who has minimum contacts with
United States. Employee Retirement Income Security
Act of 1974, § 502(e)(2), 29 U.S.C.A. § 1132(e)(2).

[2] Labor and Employment 231H ☞463

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(C) Fiduciaries and Trustees
            231Hk460 Who Are Fiduciaries
                231Hk463 k. Officers, Directors and
Partners. Most Cited Cases

(Formerly 296k44)
Allegation that top corporate executives had
discretionary authority or control over management
of company's 401(k) savings plan was sufficient to
allege their status as plan fiduciaries, for purpose of
stating ERISA claim. 26 U.S.C.A. § 401(k);
Employee Retirement Income Security Act of 1974,
§ 409, 29 U.S.C.A. § 1109.

[3] Labor and Employment 231H ☞649

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(K) Actions
            231HVII(K)3 Actions to Enforce Statutory
or Fiduciary Duties
                231Hk649 k. Pleading. Most Cited
Cases
(Formerly 296k48)
Allegation that ERISA plan fiduciaries maintained
company stock as investment alternative under plan,
despite knowledge that company's financial results
had been improperly overstated, was sufficient to
state claim for breach of fiduciary duty. Employee
Retirement Income Security Act of 1974, § 409, 29
U.S.C.A. § 1109.

[4] Labor and Employment 231H ☞649

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(K) Actions
            231HVII(K)3 Actions to Enforce Statutory
or Fiduciary Duties
                231Hk649 k. Pleading. Most Cited
Cases
(Formerly 296k83.1)
Allegation that ERISA plan fiduciaries breached
fiduciary duty by issuing summary plan descriptions
which incorporated by reference false Securities and
Exchange Commission (SEC) filings, in effort to
induce plan participants to purchase company stock,
was required to plead alleged fraud with particularity.
Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.;
Employee Retirement Income Security Act of 1974,
§ 409, 29 U.S.C.A. § 1109.

ORDER DENYING MOTION TO DISMISS
UNDER FRCP 12(b)(2), GRANTING IN PART

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2002 WL 31640557 (N.D.Cal.), 29 Employee Benefits Cas. 1368
(Cite as: Not Reported in F.Supp.2d)

AND DENYING IN PART MOTION TO DISMISS
UNDER FRCP 12(b)(6) AND RE MOTION TO
STAY
ALSUP, District J.

## INTRODUCTION

*1 In this ERISA action, two defendants specially
appear to assert lack of personal jurisdiction. In
addition, defendants collectively move to dismiss the
first amended complaint for failure to state a claim
upon which relief may be granted. This order
DENIES the motion to dismiss for lack of personal
jurisdiction. It also GRANTS in part and DENIES in
part the motion to dismiss for failure to state a claim.

Under FRE 201, this order recognizes that three days
after the hearing on these motions, defendant
WorldCom, Inc., voluntarily filed for bankruptcy
protection in the United States Bankruptcy Court for
the Southern District of New York. Accordingly, this
order is *not* a ruling as to WorldCom. *See* 11 U.S.C.
362. This order rules only on issues raised in the
moving papers pertaining to defendants Bernard J.
Ebbers and Scott D. Sullivan.

## STATEMENT

The first amended complaint alleges the following:
Plaintiffs Stephen Vivien and Edward Prince were
participants in the WorldCom 401(k) Salary Savings
Plan or its predecessor, the MCI Communications
Corporation Employee Stock Ownership Plan and
401(k) ("the plan"). To make the plan whole for
losses attributable to the decline in prices of
WorldCom stock, plaintiffs bring suit against
defendants WorldCom, Inc., and its two top officers
during the relevant time, Bernard J. Ebbers and Scott
D. Sullivan, alleging breach of fiduciary duty under
ERISA. This action purports to be on behalf of a
class of all plan participants whose individual
accounts held shares of WorldCom stock during the
period from February 8 to November 1, 2000.

The plan included a number of different investment
alternatives in which participants' individual account
balances might be invested, including a money-
market fund, a bond fund, a variety of equity funds
and one or more WorldCom stock funds. While the
plan fiduciaries had the discretion to establish and
change the investment alternatives, participants could
direct the investment of the plan's assets allocated

within their individual accounts. Since defendants
were plan fiduciaries responsible for the investment
of plan assets, they allegedly breached their fiduciary
duties when WorldCom continued to direct that the
plan purchase and hold WorldCom stock for the
participants' individual accounts despite the fact that
WorldCom and its officers allegedly knew that
WorldCom's financials were overstated through
various improper revenue-recognition practices. In
addition, WorldCom and its officers allegedly knew
that WorldCom had made a series of misleading
statements in public and government filings.
Furthermore, WorldCom and its officers allegedly
made misrepresentations to plan participants about
WorldCom's financial state by, *inter alia,* expressly
incorporating by reference WorldCom's misleading
SEC filings into the plan's summary plan
descriptions.

This action was commenced on March 18, 2002. The
first amended complaint was filed on May 3, 2002.
Therein, three claims for breach of fiduciary duty are
asserted against all defendants. Defendants Ebbers
and Sullivan now move to dismiss for lack of
personal jurisdiction under FRCP 12(b)(2). Also,
defendants collectively move to dismiss the first
amended complaint for failure to state a claim under
FRCP 12(b)(6). In addition, defendants have filed on
July 12 a motion to stay this action pending a ruling
under 28 U.S.C. 1407 by the Judicial Panel of
Multidistrict Litigation. Again, this order only rules
as to Ebbers and Sullivan.

## ANALYSIS

1. Personal Jurisdiction.

*2[1] ERISA's service-of-process provision states:
Where an action under this subchapter is brought in a
district court of the United States, it may be brought
in the district where the plan is administered, where
the breach took place, or where a defendant resides or
may be found, and process may be served in any
other district where a defendant resides or may be
found.

29 U.S.C. 1132(e)(2). Through this, Congress has
authorized nationwide service of process in ERISA
actions. *See Cripps v. Life Ins. Co. of North America,*
980 F.2d 1261, 1267 (9th Cir.1992). When evaluating
personal jurisdiction, the relevant inquiry for a
defendant served under a federal nationwide service-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2002 WL 31640557 (N.D.Cal.), 29 Employee Benefits Cas. 1368
(Cite as: Not Reported in F.Supp.2d)

of-process provision centers on his or her contacts with the United States. It does not focus on the individual state where the court sits. *See Investor Prot. Corp. v. Vigman,* 764 F.2d 1309, 1315 (9th Cir.1985) ( "Where a federal statute such as Section 27 of the [Securities Exchange] Act confers nationwide service of process, the 'question becomes whether the party has sufficient contacts with the United States, not any particular state.' "); *Go-Video, Inc. v. Akai Elec. Co.,* 885 F.2d 1406, 1416 (9th Cir.1989) ("[W]e adhere to our decision in *Vigman* that, when a statute authorizes nationwide service of process, national contacts analysis is appropriate.").

This order holds that personal jurisdiction exists over Ebbers and Sullivan. Each has sufficient contacts with the United States. Specifically, Ebbers is currently a resident of Mississippi (Ebbers Decl. ¶ 2). Sullivan, meanwhile, currently resides in Florida (Sullivan Decl. ¶ 2). Both worked for WorldCom in Mississippi (Ebbers Decl. ¶ 3; Sullivan Decl. ¶ 3).

*Varsic v. United States District Court,* 607 F.2d 245, 248-49 (9th Cir.1979), is not in conflict with *Vigman* or *Go-Video. Varsic* applied the "minimum contacts" test from the line of cases dealing with personal jurisdiction in diversity actions, generally via a state long-arm statute.*Varsic* only considered Section 1132(e)(2) as a venue provision (not as a nationwide service-of-process provision). It did not contemplate whether national contacts would be sufficient for personal jurisdiction because the defendants there were found to have sufficient contacts with California. Thus, *Varsic* did not reach the issue addressed in *Vigman* and *Go-Video.*Moreover, to the extent that *Varsic* was unclear as to whether national contacts alone may confer personal jurisdiction, the Ninth Circuit has clarified its position in *Vigman* and *Go-Video* when it expressly found that national contacts alone are sufficient for personal jurisdiction in actions involving federal nationwide service-of-process provisions. In this regard, the Ninth Circuit has stated:
When a federal district court is sitting in diversity, we agree that due process requires that the defendant have some "contacts, ties or relations" with the forum state in order to confer, in the district court, personal jurisdiction over the defendant. Nonetheless, " 'minimum contacts' with a particular district or state for purposes of personal jurisdiction is *not* a limitation imposed on the federal courts in a federal question case by due process concerns. The Constitution does not require the federal districts to

follow state boundaries .... It is clear that Congress can provide for nationwide service of process in federal court for federal question cases without failing short of the requirements of due process."

*3*Vigman, supra,* 764 F.2d at 1315 (quoting *Johnson Creative Arts & Wool v. Masters, Inc.,* 743 F.2d 947, 950 (1st Cir.1984)) (alterations in original). Based on Ebbers and Sullivan's contacts with the United States, personal jurisdiction exists. Their motion under FRCP 12(b)(2) is denied.

### 2. Failure to State a Claim.

#### A. Legal Standard.

Dismissal of a complaint under FRCP 12(b)(6) for failure to state a claim is proper only if it is beyond doubt that the plaintiff could prove no set of facts within the framework of the complaint that would entitle him or her to relief. *Conaly v. Gibson,* 355 U.S. 41, 45-8, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Specifically, dismissal is proper if only there is either a "lack of a cognizable theory" or "the absence of sufficient facts alleged under a cognizable legal theory."*Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir.1996). In addition, all reasonable inferences are drawn in its favor. *North Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578, 580 (9th Cir.1983).

To state a claim under ERISA for breach of fiduciary duty, a plaintiff must allege that (1) a defendant was a fiduciary of the plan (2) when in acting within his or her capacity as a fiduciary (3) engaged in conduct constituting a breach of fiduciary duty. 29 U .S.C. 1109; *Pegram v. Herdrich,* 530 U.S. 211, 225-26, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000).

#### B. Fiduciary of the Plan.

[2] To be a fiduciary subject to liability under ERISA, a formal designation of trusteeship is not necessary. "ERISA, however, defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, see 29 U.S.C. § 1002(21)(A), thus expanding the universe of persons subject to fiduciary duties-and to damages-under § 409(a)."*Mertens v. Hewitt Assocs.,* 508 U.S.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                 Page 4
Not Reported in F.Supp.2d, 2002 WL 31640557 (N.D.Cal.), 29 Employee Benefits Cas. 1368
**(Cite as: Not Reported in F.Supp.2d)**

248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (emphasis in original); 29 U.S.C. 1002(21)(A). The focus is on a "person's actions, not the official designation of his role, [to] determine whether he enjoys fiduciary status."*Acosta v. Pacific Enter.*, 950 F.2d 611, 618 (9th Cir.1991).

The first amended complaint sufficiently alleges that Ebbers and Sullivan were fiduciaries of the plan. In relevant part, it avers (¶¶ 18, 19):
At all relevant times, defendant Benard J. Ebbers was President and Chief Executive Officer of WorldCom and served as a member of its Board of Directors. On information and belief, at all relevant times, by reason of his actions, defendant Ebbers was a fiduciary of the Plans within the meaning of ERISA § 3(21), 29 U.S.C. 1002(21), in that he exercised discretionary authority or discretionary control respecting management of the Plans, exercised authority or control respecting management or disposition of the Plans' assets, and/or exercised discretionary authority or discretionary responsibility in the administration of the Plans.
*4 At all relevant times, defendant Scott D. Sullivan was the Chief Financial Officer of WorldCom and served as a member of its Board of Directors. On information and belief, at all relevant times, by reason of his actions, defendant Sullivan was a fiduciary of the Plans within the meaning of ERISA § 3(21), 29 U.S.C. 1002(21), in that he exercised discretionary authority or discretionary control respecting management of the Plans, exercised authority or control respecting management or disposition of the Plans' assets, and/or exercised discretionary authority or discretionary responsibility in the administration of the Plans.

Significantly, plaintiffs allege that Ebbers and Sullivan were plan fiduciaries with discretionary authority or control over the management of the plan. Under *Concha v. London*, 62 F.3d 1493, 1501-02 (9th Cir.1995), these allegations pass muster. In *Concha*, the Ninth Circuit held that allegations as to fiduciary status were sufficient because the defendants "were given and accepted discretion to manage the Plan,"*i.e.*, exercised discretionary control over management of the plan. Here, plaintiffs allege that Ebbers and Sullivan were fiduciaries by virtue of their discretionary control over the management and administration of the plan. This is enough under a FRCP 12(b)(6) analysis. Whether the evidence will bear out the allegations against Ebbers and Sullivan will be a separate question addressable on summary

judgment. Suffice it to say, in the Ninth Circuit, officers and directors are not shielded from personally becoming a fiduciary because he or she acted on behalf of a corporation that was designated as a "named fiduciary," as plaintiffs allege WorldCom was under the plan (First Am. Compl. ¶ 16).*Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1459 (9th Cir.1995).

Since plaintiffs adequately allege that Ebbers and Sullivan were fiduciaries of the plan, this order now turns to the asserted claims to analyze if a viable claim is alleged for breach of fiduciary duty. Specifically, attention is focused on whether these defendants, in their fiduciary capacity, engaged in the conduct constituting a breach.

### C. Breach of Fiduciary Duty

The first amended complaint posits three claims for relief against Ebbers and Sullivan.

### (1) The First Claim.

[3] In relevant part, the first claim alleges (First Am. Compl. ¶ 32):
Defendants' selection, monitoring, and continuation of the investment alternatives under the Plans were subject to the above-described fiduciary duties. By their acts and omissions in continuing WorldCom stock funds as investment alternatives under the Plans, defendants breached each of these fiduciary duties.

In addition to the fiduciary duties of care, skill, prudence and diligence set forth in 29 U.S.C. 1104(a)(1), plaintiffs allege that defendants had the specific "duty to review the Plans' investment policies and the selection and performance of investment alternatives offered under the Plans" and had the "discretion to establish and change the investment alternatives among which the Plans' participants could direct the investment of the Plans' assets allocated in their accounts"(*id.* at ¶ 20). Also, plaintiffs allege that as one of its duties, WorldCom was "required to elicit from itself as Plan sponsor, information necessary for the proper administration of the Plans"(*id.* at ¶ 22). As to factual allegations for breach of the above duties, plaintiffs allege that (*id.* at ¶ 2):*5 WorldCom continued to direct that the Plan purchase and hold WorldCom stock for the Plan participants' accounts despite the fact that WorldCom

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                     Page 5
Not Reported in F.Supp.2d, 2002 WL 31640557 (N.D.Cal.), 29 Employee Benefits Cas. 1368
**(Cite as: Not Reported in F.Supp.2d)**

and its officers knew that WorldCom's financial results were overstated through various improper revenue recognition and sales practices, that it could not continue its previous significant revenue and earnings growth absent a merger with Sprint, and that it had made a series of misleading statements to the public and in government filings.

Plaintiffs' first claim passes muster. It adequately alleges that defendants acted in a fiduciary capacity when maintaining WorldCom stock as an investment alternative under the plan (*id.* at ¶ 20). It further alleges that defendants breached their fiduciary duties by continuing to invest plan assets in WorldCom stock after failing to investigate/evaluate and failing to monitor the appropriateness of WorldCom stock as an investment alternative for plan participants despite the fact that defendants allegedly knew of WorldCom's financial woes and misrepresentations (*id.* at ¶¶ 2, 22, 31, 32). This is sufficient to allege and put defendants on notice of plaintiffs' theories of a failure to investigate and evaluate an investment, to invest prudently and to act in the sole interest of plan participants.

Contrary to defendants' assertion, *Landgraff v. Columbia/HCA Healthcare Corp. of Am.,* 2000 WL 33726564, *1 (M.D.Tenn.2000), does not stand for the proposition that in order to survive a motion to dismiss, a plaintiff must plead facts to rebut the presumption that a prudent fiduciary acting under similar circumstances would have made a different decision. Significantly, *Landgraff* pertained to findings of fact and conclusions of law issued after a bench trial on the merits. *Id.* at *2, *19.In this regard, a presumption relates to the proof and not to the pleadings. *N.L.R.B. v. Tragniew, Inc.,* 470 F.2d 669, 674 (9th Cir.1972) ("Presumptions in the law are procedural substitutes for evidence."). The first claim shall go forward.

Defendants argue that the first amended complaint is actually a securities-fraud action governed by the PSLRA masquerading as an ERISA action. Defendants raise some legitimate issues which might place federal securities laws and ERISA in tension in the event that recovery eventually occurs in this case, at least under some scenarios. The difficulty, however, is that this case is not at the summary-judgment stage. On its face, the complaint alleges violations of ERISA. It is impossible to rule out as a matter of law any and all ERISA recovery at the pleadings stage simply because federal securities law

may provide overlapping relief. Indulging all factors that apply on a FRCP 12(b)(6) motion and without knowing specific facts to be developed in the event, this order is unwilling to dismiss on defendants' theory of colliding bodies of law. *Electrical Const. & Maint. Co., Inc. v. Maeda Pacific Corp.,* 764 F.2d 619, 621 (9th Cir.1985) (noting special reluctance to dismiss where the complaint sets forth a novel legal theory that can be best assessed after factual development).

(2) The Second Claim.

*6 In relevant part, the second claim states (First Am. Compl. ¶ 39):

Defendants are not entitled to the protections of ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B), because the Plans' participants did not exercise independent control over their accounts by reason of the fact that defendants subjected them to improper influence with respect to the Plans' investments in WorldCom stock and defendants concealed material non-public information concerning WorldCom that defendants were not precluded from disclosing under law. By law, the Plans' purchases of WorldCom stock are deemed to have been made at the direction of defendants.

In briefing, plaintiffs clarify that their second claim seeks "a declaration that the potential insulation of Section 404(c)(1)(B) is not available to defendants and articulate the reasons for that inapplicability" (Opp.10).FN1 This is important because plaintiffs allege that the plan provided its participants with a number of investment alternatives and afforded participants an opportunity to exercise control over the investment of the assets allocated in their respective individual accounts (First Am. Compl. ¶¶ 12, 20).

> FN1.Section 1104(c)(1)(B) states:
> In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary)-
> no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The second claim is dismissed with leave to amend for failure to comply with FRCP 8(a). Specifically, neither the allegations under the second claim nor the prayer for relief state that plaintiffs seek a declaration adjudging defendants are not entitled to the protection of Section 1104(c)(1)(B).

Contrary to defendants' assertion, the statutory bar to liability under Section 1104(c)(1)(B) does not warrant dismissal at this early stage. This matter is more properly reserved for a summary-judgment motion (made at an appropriate time after adequate discovery) since "[w]hether a participant or beneficiary has exercised independent control in fact with respect to a transaction *depends on the facts and circumstances of the particular case.*" *See* 29 C.F.R. 2550.404c-1(c)(2) (emphasis added). Given its factual nature, the Section 1104(c)(1)(B) point is better reserved for summary judgment or trial, if need be.

(3) The Third Claim.

[4] In relevant part, the third claim alleges (First Am. Compl. ¶ 45):
By making false, misleading, incomplete, and inaccurate disclosures and representations to the Plans' participants, defendants breached their fiduciary duties to act solely in the interests of the participants and to act prudently.

In addition, plaintiffs allege that WorldCom had the "duty and responsibility to distribute to the Plans' participants information explaining the Plans" (*id.* at ¶ 21). As the factual basis, plaintiffs allege that (*id.* at ¶ 24): As required by ERISA, Defendants issued one or more Summary Plan Descriptions, each of which expressly incorporated by reference all of the documents filed by WorldCom with the Securities and Exchange Commission (the "SEC") under the Federal Securities Laws. These filings contained at least the following material misrepresentations concerning WorldCom's financial condition.

*7 Next, the first amended complaint lists three alleged excerpts from SEC filings that plaintiffs contend were "materially false and misleading due to the fact that WorldCom misrepresented and failed to disclose that it had overstated its financial performance and recognized false revenue by engaging in improper revenue recognition practices

in, among others, the following ways ..." (*id.* at ¶ 25). Thereafter, the first amended complaint points to nine generic improper business practices to demonstrate falsity and misrepresentation. Rather than provide specifics, plaintiffs only rely on conclusory and vague allegations.

Contrary to plaintiffs' contention, the third claim clearly sounds in fraud. It should be dismissed with leave to amend for failure to comply with FRCP 9(b).[FN2] *See Concha, supra,* 62 F.3d at 1503 ("We therefore hold that Rule 9(b) is not applicable in cases which the complaint alleges breaches of fiduciary duty under ERISA, *and does not allege fraud or mistake.*") (emphasis added). In the interest of moving this case along, at the hearing, the Court ordered plaintiffs to serve on defendants by July 25 sworn interrogatories that detail specific evidence as to the nine improper business practices alleged in paragraph 25. The Court anticipates that these interrogatories will be sufficiently particular to provide defendants with adequate notice. If not, a new motion to dismiss for failure to comply with FRCP 9(b) may be brought.

> FN2. As stated at the hearing, this order is not applying the heightened pleading standard under the PSLRA.

In attacking the third claim, defendants contend that they were not acting in a fiduciary capacity when WorldCom prepared and filed the required SEC disclosures containing the alleged false statements. The distinction to mind is the one between "ordinary business decisions made" in a corporate capacity "which might have an adverse impact on the plan" and actions by an employer in a fiduciary capacity directed toward plan participants. *See Varity Corp. v. Howe,* 516 U.S. 489, 505, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Plaintiffs allegations, however, are not as simplistic and clear-cut as defendants contend. Plaintiffs allege that in fulfilling a statutory duty under ERISA to provide periodic plan information, defendants issued summary plan descriptions that expressly incorporated by reference false SEC filings (which defendants allegedly knew were false) in an effort to induce the plan and its participants to purchase WorldCom stock (First Am. Compl. ¶¶ 24, 26, 46). In this regard, it would be premature to rule out the third claim as a matter of law on the basis that defendants were *not* acting in a fiduciary capacity when issuing summary plan descriptions merely because the descriptions

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 7
Not Reported in F.Supp.2d, 2002 WL 31640557 (N.D.Cal.), 29 Employee Benefits Cas. 1368
**(Cite as: Not Reported in F.Supp.2d)**

incorporated by reference SEC filings presumably undertaken in a corporate capacity.[FN3]

> **FN3.** On the importance of periodic plan information, the Supreme Court in *Varity* stated:
> Conveying information about the likely future of plan benefits, thereby permitting beneficiaries to make an informed choice about continued participation, would seem to be an exercise of power "appropriate" to carrying out an important plan purpose. After all, ERISA itself specifically requires administrators to give beneficiaries certain information about the plan. See, *e.g.*, ERISA §§ 102, 104(b)(1), 105(a). And administrators, as part of their administrative responsibilities, frequently offer beneficiaries more than the minimum information that the statute requires-for example, answering beneficiaries' questions about the meaning of the terms of a plan so that those beneficiaries can more easily obtain the plan's benefits. To offer beneficiaries detailed plan information in order to help them decide whether to remain in the plan is essentially the same kind of plan-related activity.
> 516 U.S. at 503. Likewise, the summary plan descriptions which allegedly incorporated by reference WorldCom's SEC filings were presumably used to convey information to plan participants on the safety and value of the WorldCom stock-investment alternative within their 401(k) plan.

Contrary to defendants' assertion, *Hull v. Policy Management Sys. Corp.*, 2001 WL 1836286 *1, *5-8 (D.S.C.2001), did not dismiss the complaint as a matter law by concluding that the claim asserted there was "nothing more than an ineffective attempt to recast the securities action as an ERISA action."Similar to the allegations in this action, *Hull* involved a plaintiff suing her employer and the employer's CEO for breach of fiduciary duties owed to the employee-pension plan. The plaintiff alleged that misinformation and lack of accurate information caused that plan to purchase and retain the employer's stock at a time when it was overvalued. The plaintiff sought to hold the corporate defendants liable for that plan's losses occasioned by the drop in share price. *Hull* held that the corporate defendants there did not

act in a fiduciary capacity by allegedly committing wrongs that amounted to fraud on the market. Specifically, it held that the corporate defendants did not act in their fiduciary capacity because the wrongs alleged did not implicate any of the narrow fiduciary duties owed by the defendant employer and CEO to that plan. Significantly, *Hull* compared the fiduciary duties alleged in the complaint with the limited fiduciary duties actually enumerated within that plan's governing written instrument. Finding a disconnect between the two, *Hull* dismissed the complaint as to the corporate defendants. In this regard, *Hull* concluded:

*8 In sum, while the Plan documents demonstrate that the corporate defendant owed certain limited fiduciary duties to the Plan, and while plaintiff includes numerous allegations of wrongdoing by the corporate defendants, there is no connection between the two. If the allegations of wrongdoing, including allegations of providing misinformation and failing to provide accurate information, ultimately prove true, the Plan's remedy will be the same as for the plaintiff class in the related securities class action. This result is not at all unreasonable as the duties of disclosure owed to the Plan by the corporate defendants are not based on the duties owed by an ERISA fiduciary to a Plan and its participants, but the general duties of disclosure owed by a corporation and its officers to the corporation's shareholders.

The difference, for now, between *Hull* and this action is that plaintiffs here allege that "as one of its duties in administering the Plans, WorldCom, as the Plan Administrator, had the duty and responsibility to distribute to the Plans' participants information explaining the Plans" (First Am. Comp. ¶ 21). Again, it is impossible to rule out as a matter of law any and all ERISA recovery at the pleadings stage simply because federal securities law may provide overlapping relief.

CONCLUSION

Defendant Ebbers and Sullivan's motion for lack of personal jurisdiction is DENIED. The motion to dismiss the first amended complaint is GRANTED in part and DENIED in part with leave to amend. Any amendment must be made within 14 calendar days from the entry of this order.

In addition, defendants have filed on July 12 a motion to stay this action pending a ruling under 28 U.S.C. 1407 by the Judicial Panel of Multidistrict

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 8
Not Reported in F.Supp.2d, 2002 WL 31640557 (N.D.Cal.), 29 Employee Benefits Cas. 1368
**(Cite as: Not Reported in F.Supp.2d)**


Litigation. For the reasons stated at the hearing on the
motions to dismiss, defendants' motion to stay is
DENIED. The hearing noticed for August 22, 2002,
is VACATED. Discovery is not stayed (except as to
WorldCom, now in bankruptcy).

IT IS SO ORDERED.

N.D.Cal.,2002.
Vivien v. Worldcom, Inc.
Not Reported in F.Supp.2d, 2002 WL 31640557
(N.D.Cal.), 29 Employee Benefits Cas. 1368

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2005 WL 1799740 (W.D.Wash.)
**(Cite as: Not Reported in F.Supp.2d)**

▷Waitt v. Merck & Co., Inc.
W.D.Wash.,2005.
Only the Westlaw citation is currently available.
United States District Court,W.D. Washington.
Robert K. WAITT, on his own behalf and on behalf
of all individuals and entities similarly situated,
Plaintiff,
v.
MERCK & COMPANY, INC., et al., Defendants.
No. C05-0759L.

July 27, 2005.

James J. Ragen, Richard Lawrence Martens,
Martens-Ragen, Seattle, WA, for Plaintiff.
Douglas A. Hofmann, Jeffrey Royal Johnson,
Williams Kastner & Gibbs, Andrew C. Gauen,
Merrick Hofstedt & Lindsey, Seattle, WA, for
Defendants.

ORDER REGARDING MOTION TO STAY AND
MOTION TO REMAND
LASNIK, J.

I. Introduction

*1 This matter comes before the Court on defendant
Merck and Company, Inc.'s ("Merck") "Motion to
Stay Proceedings Pending Transfer Decision by the
Judicial Panel on Multidistrict Litigation."In
response, plaintiff filed an "Opposition to Motion to
Stay and Cross-Motion to Remand for Lack of
Subject Matter Jurisdiction."For the reasons set forth
herein, the Court denies both Merck's motion to stay
and plaintiff's request to remand.

II. Background

On April 6, 2005, plaintiff Robert Waitt filed a class
action complaint in King County Superior Court. The
complaint sets forth a number of causes of action for
economic damages associated with the recall of the
drug Vioxx. Specifically, the complaint alleges that
Merck failed to reimburse plaintiff for the cost of his
unused Vioxx, as promised, and subsequently refused
to return the unused Vioxx to him. Merck, the drug's
manufacturer, removed the matter to federal court
pursuant to 28 U.S.C. §§ 1441 & 1332(d). Merck

now moves to stay the case pending a decision from
the Judicial Panel on Multidistrict Litigation
("JPML") as to whether this case is to be
consolidated with those currently pending before
Judge Fallon in the Eastern District of
Louisiana.[FN1]Plaintiff argues that this matter is not
appropriate for consolidation and, accordingly, that a
stay is not warranted. Moreover, plaintiff argues that
removal was improper and moves to remand the
matter to state court. Merck counters that this Court
should not rule on plaintiff's motion to remand,
contending that it is for the transferee court in
Louisiana to consider. This Court disagrees.
See*Tortola Restaurants v. Kimberly Clark Corp.*, 987
F.Supp. 1186, 1188 (N.D.Cal.1997) ("A putative
transferor court need not automatically postpone
rulings on pending motions, or in any way generally
suspend proceedings, merely on grounds that an
MDL transfer motion has been filed."). 
Consequently, the Court will first address plaintiff's
motion to remand for lack of subject matter
jurisdiction and then turn to Merck's motion to stay.

> FN1. Judge Fallon was selected by the
> JPML to preside over the great many cases
> filed around the nation that involve the
> health risks associated with Vioxx. On June
> 13, 2005, the JPML issued a Conditional
> Transfer Order ("CTO") that included this
> case. Plaintiff opposed the CTO, and the
> JPML's final decision on transfer is pending.

III. Discussion

A. Plaintiff's Motion to Remand for Lack of Subject
Matter Jurisdiction.

The resolution of issues raised by the motion to
remand turns upon the recently enacted Class Action
Fairness Act ("CAFA"), and specifically upon
whether it places the burden of proof for the propriety
of removal upon the plaintiff or the
defendant.[FN2]Plaintiff argues that CAFA does not
modify the existing standard for remand because the
statute itself is void of any language providing for such
modification. Merck counters that it was Congress'
intent, as evidenced by CAFA's legislative history, to
place the burden of showing that removal was
improper upon the party moving for remand. Neither

Not Reported in F.Supp.2d                                                                                  Page 2
Not Reported in F.Supp.2d, 2005 WL 1799740 (W.D.Wash.)
**(Cite as: Not Reported in F.Supp.2d)**

the Court nor the parties, as is evident from their briefing, could find published case law addressing this issue; the matter appears to be one of first impression in federal jurisprudence.

> FN2. As plaintiff points out in his cross-motion, the customary rule governing removal and remand provides that the party invoking federal jurisdiction bears the burden of demonstrating its existence, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); any doubt as to the propriety of removal is resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). The issue before the Court, then, is essentially one of statutory construction (i.e., whether CAFA modifies the customary rule) rather than one predicated upon the traditional legal standard for remand.

In cases of statutory construction, the Court's task is to "interpret the words of the statute in light of the purposes Congress sought to serve."*Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co. of Va.*, 464 U.S. 30, 36, 104 S.Ct. 304, 78 L.Ed.2d 29 (1983). CAFA, which is codified at various places in Title 28 of the United States Code, effects its relevant changes upon 28 U.S.C. § 1332, colloquially known as the diversity jurisdiction statute. Regarding these changes, the Senate Committee on the Judiciary stated: "[o]verall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant."S.Rep. No. 109-14, at 43 (2005). That is, CAFA is designed to permit federal courts to hear more interstate class actions and to relax the barriers facing defendants who seek to remove qualifying class actions to federal court. *See id.* at 5.

*2 With specific regard to removal and remand, plaintiff correctly points out that CAFA itself lacks burden-shifting language. However, notwithstanding the absence of explicit statutory provisions, it is not difficult to divine Congressional intent from CAFA's legislative history:
Pursuant to new subsection 1332(d)(6), the claims of the individual class members in any class action shall be aggregated to determine whether the amount in controversy exceeds the sum or value of

$5,000,000.... The Committee intends this subsection to be interpreted expansively. If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional requirements are not satisfied). And if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case.

*Id.* at 42.The Senate Committee on the Judiciary also stated:It is the Committee's intention with regard to each of these exceptions that the party opposing federal jurisdiction shall have the burden of demonstrating the applicability of an exemption. Thus, if a plaintiff seeks to have a class action remanded under section 1332(d)(4)(A) on the ground that the primary defendants and two thirds or more of the class members are citizens of the home state, that plaintiff shall have the burden of demonstrating that these criteria are met by the lawsuit. Similarly, if a plaintiff seeks to have a purported class action remanded for lack of federal diversity jurisdiction under subsection 1332(d)(5)(B) ... that plaintiff should have the burden of demonstrating that 'all matters in controversy' do not 'in the aggregate exceed the sum or value of $5,000,000, exclusive of interest and costs' or that 'the number of all proposed plaintiff classes in the aggregate is less than 100.'

*Id.* at 44;*see also id.* at 43 ("it is the intent of the Committee that the named plaintiff(s) should bear the burden of demonstrating that a case should be remanded to state court (e.g., the burden of demonstrating that more than two-thirds of the proposed class members are citizens of the forum state).").[FN3]

> FN3. Plaintiff's claims that the Report of the Senate Committee on the Judiciary is "cryptic" and requires a "strained process of deduction" are not well-founded. *See* Reply at 5.

Based on the foregoing legislative history, the Court holds that Merck's reading of CAFA is the correct one and that it is plaintiff's responsibility to demonstrate that removal from state court was improvident. *See, e.g.,* Michael J. Mueller & Tobias E. Zimmerman, *The Brave New World of Removal*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Practice Under the Class Action Fairness Act,* 12 No. 3 Andrews Class Action Litig. Rep. 18 at p. 25 (2005) ("[Courts can] find support in [CAFA's] ... legislative history that indicates that Congress intended to place the burden on the opponent of federal jurisdiction. It is entirely plausible that courts will develop a new test whereby, once a defendant has proven diversity of parties under Section 1332(d)(2), the burden will then fall on the plaintiffs to show that remand is nonetheless warranted"). Plaintiff's lone attempt to discharge this burden is to argue that he has made a prima facie showing that his damages do not meet the $5,000,000 amount in controversy requirement contained in 28 U.S.C. § 1332(d). Reply at 3 (claiming damages in the amount of $76.27). However, plaintiff's reply fails to include any of the economic damages suffered by the nationwide class he purportedly represents and similarly fails to mention that his complaint requests treble and/or punitive damages. In short, plaintiff has not met his burden; it follows that remand to state court is inappropriate.

### B. Merck's Motion to Stay.

*3 Merck contends that the Court should stay the proceedings because: (1) the present suit involves facts similar to those in the cases consolidated in Louisiana; and (2) it will save judicial resources and avoid conflicting rulings. The significance of Merck's second contention, however, is contingent upon the truth of the first. That is, there is no risk of conflicting rulings or inefficient use of resources when the issues being litigated are factually distinct. Despite Merck's efforts to paint plaintiff's complaint as akin to those pending before Judge Fallon, and therefore a likely "tag-along action" under 28 U.S.C. § 1407, the fact of the matter is that they are quite different.

The Rules of Procedure of the JPML define a "tag-along action" as one "involving common questions of fact with actions previously transferred under Section 1407." 199 F.R.D. 425 (2001). According to the JPML's Transfer Order, the questions of fact before Judge Ellon in the Eastern District of Louisiana all involve the alleged health risks associated with Vioxx. *See* Hoffman Decl., Ex. A (stating that the consolidation of certain Vioxx cases in Louisiana is warranted under 28 U.S.C. § 1407 because "[a]ll actions focus on the alleged increased health risks ... when taking Vioxx, an anti-inflammatory drug, and whether Merck knew of these increased risks and

failed to disclose them to the medical community and consumers."). Therefore, if plaintiff's complaint contained allegations of personal or bodily injury, or made claims for damages based on health risks or product liability, the Court would likely stay the present proceedings pending a transfer decision by the JPML. The complaint does not, however, allege health risks, nor does it allege that Merck knew of the risks and failed to disclose them. Rather, it alleges purely economic damages and contains five clear causes of action in connection with the Vioxx recall: breach of contract, common law negligence, negligent misrepresentation, injunctive/equitable/declaratory relief, and violation of the Consumer Protection Act. Based on the current record, it appears that these causes of action do not involve common questions of fact with those cases consolidated in the Eastern District of Louisiana. Accordingly, a stay is inappropriate.

### IV. Conclusion

For all of the foregoing reasons, it is hereby ORDERED that Merck's motion to stay the proceedings (Dkt.# 10) be DENIED. Plaintiff's cross-motion to remand for lack of subject matter jurisdiction (Dkt.# 17) is also DENIED.[FN4]

FN4. The Court GRANTS Merck's unopposed motion to file a surreply (Dkt.# 24) and has considered the surreply.

W.D.Wash.,2005.
Waitt v. Merck & Co., Inc.
Not Reported in F.Supp.2d, 2005 WL 1799740 (W.D.Wash.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.